## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Michael Dahdah, *on behalf of himself and others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Rocket Mortgage, LLC,<br><br>Defendant. | Case No. 2:22-cv-11863-SJM-DRG<br><br>Hon. Judge Stephen J. Murphy, III<br>U.S. District Judge<br><br>Hon. David R. Grand<br>U.S. Magistrate Judge<br><br>***ORAL ARGUMENT REQUESTED*** |

## ROCKET MORTGAGE, LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT

In his Complaint, Plaintiff Michael Dahdah ("Plaintiff" or "Dahdah") alleges that Rocket Mortgage, LLC ("Rocket Mortgage") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by making purported calls to his cellphone. Rocket Mortgage moves to compel Dahdah's claim to arbitration and dismiss the Complaint pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, because it is subject to multiple, binding and enforceable arbitration agreements.[1] Indeed, approximately three (3) months ago, this Court (Cox, J.) granted Rocket Mortgage's motion to compel arbitration of a different plaintiff's TCPA claims based on nearly identical facts and the same, enforceable arbitration

---

[1] Without prejudice to this Motion, Rocket Mortgage also has contemporaneously moved to dismiss Dahdah's claim pursuant to Fed. R. Civ. P. 8 and 12(b)(6).

agreement that Dahdah agreed to here. *Shirley v. Rocket Mortg.*, No. 2:21-cv-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022). This Court should follow Judge Cox's decision in *Shirley* and likewise compel this case to arbitration. In fact, the case to compel arbitration is even stronger here than in *Shirley* because there was a single agreement to arbitrate that this Court enforced in *Shirley*, whereas Dahdah entered that agreement to arbitrate (not litigate) his TCPA claims on three separate occasions.

The grounds for this Motion are set forth in the accompanying Memorandum of Law. Pursuant to Local Rule 7.1(a), Rocket Mortgage's undersigned counsel certifies that he conferred with counsel for Plaintiff by telephone on October 6, 2022, explaining the nature of the relief to be sought by this Motion, the grounds for the relief, and seeking concurrence in the relief; opposing counsel expressly denied concurrence.

Respectfully submitted,

/s/ *W. Kyle Tayman*

W. Kyle Tayman
Brooks R. Brown
Christina L. Hennecken
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC  20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
BBrown@goodwinlaw.com
KTayman@goodwinlaw.com
Chennecken@goodwinlaw.com

Jeffrey M. Thomson (P72202)
jthomson@morganrothlaw.com
MORGANROTH AND MORGANROTH PLLC
344 North Old Woodard Avenue, Suite 200
Birmingham, MI  48009
Tel.: +1 248 864 4000
Fax: +1 248 864 4001

*Counsel for Rocket Mortgage, LLC*

Dated:  October 11, 2022

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| Michael Dahdah, *on behalf of himself and others similarly situated*,<br><br>    Plaintiff,<br><br>  v.<br><br>Rocket Mortgage, LLC,<br><br>    Defendant. | Case No. 2:22-cv-11863-SJM-DRG<br><br>Hon. Judge Stephen J. Murphy, III<br>    U.S. District Judge<br><br>Hon. David R. Grand<br>    U.S. Magistrate Judge |

**MEMORANDUM OF LAW IN SUPPORT
OF ROCKET MORTGAGE LLC'S MOTION TO
<u>COMPEL ARBITRATION AND DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

I.   Rocket Mortgage and LMB Are Affiliated Companies. ................................... 2

II.  Plaintiff Agreed To Arbitrate His Claims Against Rocket Mortgage
     Multiple Times in October 2020 and February 2021. ..................................... 3

     A. October 21, 2020 Agreement to LMB's Consent Language and
        Terms of Use. ........................................................................................... 4

     B. February 18, 2021 Agreement to LMB's Consent Language and
        Terms of Use. ........................................................................................... 6

     C. February 19, 2021 Agreement to LMB's Consent Language and
        Terms of Use. ........................................................................................... 8

     D. LMB's Terms of Use ................................................................................ 11

III. The Lawsuit ..................................................................................................... 12

LEGAL STANDARD ............................................................................................... 13

ARGUMENT ............................................................................................................ 14

I.   Plaintiff Affirmatively Agreed To LMB's Terms of Use After Being on
     Inquiry Notice of Them. ................................................................................. 15

II.  Rocket Mortgage Is Entitled To Enforce the LMB Terms of Use. ................ 19

     A. Rocket Mortgage Is a Third-Party Beneficiary. ...................................... 20

     B. Dahdah Is Estopped from Denying Application of the Agreement. ......... 22

III. While the Issue Is Expressly Reserved to the Arbitrator, This Dispute
     Does Not Fall Outside the Arbitration Agreement ........................................ 23

CONCLUSION ........................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Amazon.com, Inc.*,
   490 F. Supp. 3d 1265 (M.D. Tenn. 2020) ........................................................16

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)..........................................................................................13

*Blanton v. Domino's Pizza Franchising LLC*,
   No. 18-13207, 2019 WL 5543027 (E.D. Mich. Oct. 25, 2019),
   *aff'd*, 962 F.3d 842 (6th Cir. 2020)......................................................................14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ...................................................................24, 25

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) .........................................................................23

*Currithers v. FedEx Ground Package Sys., Inc.*,
   2012 WL 458466 (E.D. Mich. Feb. 13, 2012)...................................................14

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)..........................................................................................13

*Dohrmann v. Intuit, Inc.*,
   823 F. App'x 482 (9th Cir. 2020) ......................................................................19

*Ege v. Express Messenger Sys. Inc.*,
   745 F. App'x 19 (9th Cir. 2018) ..................................................................21, 22

*Franklin v. Cmty. Reg'l Med. Ctr.*,
   998 F.3d 867 (9th Cir. 2021) .............................................................19, 22, 23

*Garcia v. Pexco, LLC*,
   217 Cal. Rptr. 3d 793 (Cal. Ct. App. 2017).......................................................19

*Gilbert v. Bank of Am.*,
   No. C 13-01171 JSW, 2015 WL 12953229 (N.D. Cal. Jan. 12,
   2015) .................................................................................................................19

*Hajibekyan v. BMW of N. Am., LLC*,
   839 F. App'x 187 (9th Cir. 2021) ........................................................20

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ..........................................................................24

*Hergenreder v. Bickford Senior Living Grp., LLC*,
   656 F.3d 411 (6th Cir. 2011) ..............................................................15

*Jones-Bey v. JPay Inc.*,
   No. 2:17-cv-12545, 2019 WL 6337770 (E.D. Mich. Oct. 10, 2019),
   *report and recommendation adopted*, No. 17-12545, 2019 WL
   6329666 (E.D. Mich. Nov. 26, 2019).   .......................................14, 16

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ............................................................19

*Labajo v First Int'l Bank & Tr.*,
   No. 14-00627, 2014 WL 4090527 (C.D. Cal. July 9, 2014) ...............21

*Landis v. Pinnacle Eye Care, LLC*,
   537 F.3d 559 (6th Cir. 2008) ..............................................................14

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) ................................................16, 18

*Lei v. Amway Corp.*,
   No. 14-04022, 2014 WL 12596787 (C.D. Cal. July 23, 2014) ..........21

*Mohamed v. Uber Techs., Inc.*,
   109 F. Supp. 3d 1185 (N.D. Cal. 2015), *aff'd in part, rev'd in part,
   remanded*, 848 F.3d 1201 (9th Cir. 2016) .........................................25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ........................................................................13, 25

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ............................................................20

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ............................................................15

*Pizarro v. QuinStreet, Inc.*,
    No. 22-02803, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022)...........................19

*Shirley v. Rocket Mortg.*,
    No. 2:21-cv-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022) ...........*passim*

*Shivkov v. Artex Risk Sols., Inc.*,
    974 F.3d 1051 (9th Cir. 2020), *cert denied*, 141 S. Ct. 2856 (2021) ................23

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000) ...............................................................13

*Sun Moon Star Advanced Power, Inc. v. Chappell*,
    773 F. Supp. 1373 (N.D. Cal. 1990)....................................................21

*Thomson-CSF, S.A. v. Am. Arb. Ass'n*,
    64 F.3d 773 (2d Cir. 1995) .................................................................23

## Statutes

9 U.S.C. § 2 ...........................................................................................13

47 U.S.C. § 227(c)(5)............................................................................1, 12

## Other Authorities

Affiliate Definition, *Black's Law Dictionary* (11th ed. 2019).................................21

## ISSUE PRESENTED

(1)     Should this Court compel Plaintiff's claims to arbitration and/or dismiss them because Plaintiff agreed to arbitrate his claims in accordance with his binding agreements with Rocket Mortgage and LMB Mortgage Services, Inc. d/b/a LowerMyBills.com?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

1) *Shirley v. Rocket Mortg.*, No. 2:21-cv-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022)

2) *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)

3) *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411 (6th Cir. 2011)

4) *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014)

5) *Lee v. Ticketmaster L.L.C.,* 817 F. App'x 393 (9th Cir. 2020)

6) Order Granting Defendants' Motion to Compel Arbitration, *Rodriguez v. Experian Servs. Corp.*, No. 2:15-cv-03553-R-MRW (C.D. Cal. Oct. 5, 2015), ECF No. 43

7) *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867 (9th Cir. 2021)

8) *Hajibekyan v. BMW of N. Am., LLC*, 839 F. App'x 187 (9th Cir. 2021)

## **INTRODUCTION**

In direct violation of multiple agreements to arbitrate (not litigate) his claims against Rocket Mortgage on an individual (not class) basis, Dahdah purports to bring this putative class action lawsuit against the Company—a multiple J.D. Power award winner for customer service in mortgage loan origination and servicing—for alleged violations of the TCPA arising from purported calls to his cellphone.  47 U.S.C. § 227(c)(5). This Court should foreclose this effort and compel Dahdah's TCPA claims to arbitration just as Judge Cox did three months ago in a nearly identical TCPA class action against Rocket Mortgage involving the ***same arbitration agreement*** as at issue in this case.  *Shirley v. Rocket Mortg.*, No. 2:21-cv-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022).

Just as the plaintiff in *Shirley*, Dahdah visited and used LowerMyBills.com—a website belonging to Rocket Mortgage's affiliate LMB Mortgage Services, Inc. (d/b/a LowerMyBills.com ("LMB"))—to request mortgage refinance information from Rocket Mortgage (and others).   In so doing, Dahdah expressly agreed (repeatedly) to the same arbitration provision contained as part of LMB's Terms of Use as the plaintiff in *Shirley*.  That arbitration provision requires that Dahdah arbitrate any TCPA and other claims against Rocket Mortgage arising from his use of and submissions at LowerMyBills.com—*i.e.*, the precise claims at issue here. Indeed, in *Shirley,* this Court (Cox, J.) held that LMB's arbitration provision was

1

enforceable by Rocket Mortgage, and that its terms were clearly and conspicuously disclosed to the plaintiff. *Id.* at **7-8. As such, this Court granted Rocket Mortgage's motion and compelled plaintiff's TCPA claims to binding, non-class arbitration. *Id.* at *8. Dahdah entered into that same arbitration agreement no less than three separate times. Therefore, as in *Shirley*, this Court should grant Rocket Mortgage's motion and compel this matter to arbitration.

## **BACKGROUND**

### I.   ROCKET MORTGAGE AND LMB ARE AFFILIATED COMPANIES.

As part of its residential mortgage business, Rocket Mortgage contacts individuals who have expressed an interest in learning more about its mortgage products and consented to being contacted. While many of these individuals come to Rocket Mortgage directly (through RocketMortgage.com or by calling the Company's direct line), others like Dahdah express their interest and provide their consent to be contacted by Rocket Mortgage through other channels, including websites run by its affiliate LMB. Courtney Decl. ¶ 3. LMB and Rocket Mortgage share the same parent company, RKT Holdings, LLC. Viner Decl. ¶ 3; Courtney Decl. ¶ 3; *Shirley*, 2022 WL 2541123, at *1.

LMB operates a free online service for consumers seeking home mortgage and refinance loans at its website, LowerMyBills.com. Viner Decl. ¶ 3. For consumers (like Plaintiff) who navigate to this website and voluntarily enter various

pieces of information about themselves—such as their property address, phone number, e-mail address, estimated home value, current interest rate, and amount of debt—LMB will match and refer consumers to Rocket Mortgage and other mortgage loan providers.  Viner Decl. ¶ 4.  To avail themselves of this free referral service, consumers visiting the site in October 2020 and February 2021 (like Plaintiff) had to, among other things, first agree to be bound by LMB's Terms of Use.  Viner Decl. ¶¶ 11, 21, 29.  LMB's Terms of Use provide for, among other things, mandatory arbitration of all claims, disputes, and controversies with LMB and its affiliates like Rocket Mortgage arising from or relating to the use of LMB's services, including claims alleging violation of the TCPA.  *Id*. Ex. 5 ¶ 2; *Shirley*, 2022 WL 2541123, at *2.

## II.   PLAINTIFF AGREED TO ARBITRATE HIS CLAIMS AGAINST ROCKET MORTGAGE MULTIPLE TIMES IN OCTOBER 2020 AND FEBRUARY 2021.

According to public records, Plaintiff has owned a home at 1300 N Street NW, Apt. 211, Washington, DC 20005-3689 (the "Property") since February 2020. Hennecken Decl. Exs. 1-2.  On three separate occasions (October 21, 2020, February 18, 2021, and February 19, 2021), Plaintiff visited LowerMyBills.com seeking mortgage refinance information relating to the Property.  Viner Decl. ¶ 8.  Each time, Plaintiff entered his information, including his name, his email address, the telephone number 310-951-0114, and the address 1300 N Street NW, Apt. 211, Washington, DC 20005.  *Id*.  The telephone number Plaintiff entered into the

3

LowerMyBills.com website is the same as the telephone number that Plaintiff alleges in his Complaint belongs to him.  Compl. ¶ 20, ECF No. 1, PageID.3.

### A. October 21, 2020 Agreement to LMB's Consent Language and Terms of Use.

On October 21, 2020, to complete his online request for refinance information at LowerMyBills.com, Plaintiff filled out information on five distinct pages using his mobile phone.  Viner Decl. ¶ 13.  LMB's disclosures, Terms of Use, and Privacy Policy were presented to Plaintiff multiple times during this process.  *Id.* ¶¶ 14-18. On the fourth page, after typing in personal information including his property address 1300 N St NW, Apt 211, Washington, DC 20005 and email address michaelxdahdah@gmail.com, Plaintiff clicked a green submission button labeled "Calculate."  *Id.*  ¶¶ 14-15.  Displayed immediately below that button was a conspicuous express disclosure providing that "[b]y clicking the button above, you agree to be contacted by LowerMyBills, at the address entered above for promotional emails *and consent, electronically via E-sign, to the LMB Lending **Terms of Use**, **Privacy Policy***, and Consent to Doing Business Electronically."  *Id.* ¶ 15 (emphasis added).[2]  The phrase "Terms of Use" was a hyperlink that was underlined and appeared in blue text. *Id.* ¶ 15.  Clicking on the words "Terms of Use" took the consumer to LMB's complete Terms of Use, which included the

---

[2] Displayed below this language was the text:  "Featured Provider Quicken Loans" (now known as "Rocket Mortgage").  *Id.* ¶ 15.

subject arbitration provision discussed in Section D, *infra*, enabling the consumer to review them before clicking the "Calculate" button to agree to them.  *Id.*

On the next page, Plaintiff typed in additional personal information, including his cellphone number ending in -0114.  *Id.* ¶ 16.   Immediately below where he entered the phone number was a disclosure stating:  "Enter your phone number above to receive automated and/or pre-recorded calls only from us and/or the providers that are matched to you."  *Id.* Ex. 1 p. 4.   Below this disclosure, Plaintiff clicked a green "Calculate your FREE results" button.  Viner Decl. ¶ 17.   Immediately below that button was another clear and conspicuous disclosure informing Plaintiff that "[b]y clicking the button above, you express your understanding and consent, electronically via E-sign," to the following:

1.  To be matched with, and contacted by, up to 5 participants in the **LMB Provider Network** about mortgage and financial services products, and consent (not required as a condition to purchase a good/service) for us and them to contact you (including through automated or prerecorded means) via telephone at the phone number provided above, on mobile devices (including SMS and MMS), and email, even if you are on a corporate, state or national Do Not call Registry.  As an alternative, you may contact us by email at customercare@coredigital.com

2.  To the LMB Lending **Terms of Use**, **Privacy Policy**, and Consent to Doing Business Electronically.

*Id.* (emphasis in original).  The words "LMB Provider Network" were hyperlinked to a list identifying Quicken Loans (n/k/a Rocket Mortgage) as one of the lenders in the "LMB Provider Network."  *Id.* ¶ 19.   The phrase "Terms of Use" was also a

5

hyperlink that was underlined and appeared in blue text. *Id.* ¶ 18. Again, clicking on the words "Terms of Use" took the user to LMB's full-text Terms of Use, which the user could again review, before clicking the green "Calculate your Free Results" button to confirm agreement to them. *Id.* ¶ 18. Thus, by clicking the "Calculate" button and the "Calculate your FREE results" button to use LMB's free service, Plaintiff twice agreed to LMB's Terms of Use setting forth "the terms and conditions applicable to [his] use of the LMB Website and the products and services provided through or in connection with the LMB Website." *Id.* Ex. 5 p. 1.

After clicking "Calculate your FREE results," Plaintiff was shown a page showing that he had been matched with Quicken Loans (n/k/a Rocket Mortgage) and that a refinance might result in a possible monthly payment decrease on his mortgage payment. Viner Decl. ¶ 20.

**B.     February 18, 2021 Agreement to LMB's Consent Language and Terms of Use.**

On February 18, 2021, to complete his next online request for refinance information at LowerMyBills.com, Plaintiff filled out information on five distinct pages using his mobile phone. *Id.* ¶ 24. LMB's disclosures and Terms of Use were again presented to Plaintiff multiple times during this process and he repeatedly confirmed his agreement to them. *Id.* ¶¶ 24-27. On the fourth page, Plaintiff typed in personal information, including his property address at 1300 N St NW, Apt 211, Washington, DC 20005 and email address michaelxdahdah@gmail.com. On the

6

fifth page, after typing in additional personal information including his name, Plaintiff entered the -0114 phone number. *Id.* ¶¶ 24-25. Displayed immediately below where he entered the phone number was a conspicuous express disclosure informing Plaintiff that "[b]y clicking the button below, you acknowledge, consent, and agree to our terms at the bottom of this page." *Id.* ¶ 26. The "button below" was labeled "Calculate your results" and Plaintiff clicked that button to proceed with his submission and use LMB's services. *Id.* ¶ 26. The referenced "terms" displayed immediately below that button informed him that:

> By submitting your contact information you agree to our ***Terms of Use*** and our **Security and Privacy Policy**. You also expressly consent to us and Quicken Loans to contact you for marketing purposes about your inquiry, home refinance, or other mortgage related products by text message . . . or phone (including through the use of an automatic telephone dialing system or an artificial or prerecorded voice) to the residential or cellular telephone number you have provided, even if that telephone number is on a corporate, state, or national Do Not Call Registry. . . .

*Id.* ¶ 26 (emphasis added). The phrase "Terms of Use" was a hyperlink that was underlined and appeared in blue text. *Id.* ¶ 27. Clicking on the words "Terms of Use" took the user to LMB's complete Terms of Use, which included the subject arbitration provision discussed in Section D, *infra*, enabling the user to review them before clicking the "Calculate your results" button to agree to them. *Id.* Thus, by clicking the "Calculate your results" button to use LMB's free service, Plaintiff again agreed to LMB's Terms of Use setting forth "the terms and conditions

7

applicable to [his] use of the LMB Website and the products and services provided through or in connection with the LMB Website." *Id.* Ex. 5 p. 1.

After clicking "Calculate your results," Plaintiff was shown a page informing him that he had been matched with Quicken Loans (n/k/a Rocket Mortgage).  Viner Decl. ¶ 28.  The page also stated, "Results for 1300 N St NW, Apt 211" and listed the possible interest rate for a 15-year fixed-rate mortgage and potential new monthly payment. *Id.*

### C. February 19, 2021 Agreement to LMB's Consent Language and Terms of Use.

On February 19, 2021, to complete his third online request for refinance information at LowerMyBills.com, Plaintiff again filled out information on five distinct pages using his mobile phone. *Id.* ¶ 29.  LMB's disclosures, Terms of Use, and Privacy Policy again were presented to Plaintiff multiple times during this process and repeatedly agreed to by Plaintiff. *Id.*  ¶¶ 30-35.  On the fourth page, after typing in personal information including his property address 1300 N St NW, Apt 211 Washington, DC 20005 and email address michaelxdahdah@gmail.com, Plaintiff clicked a green submission button labeled "Calculate." *Id.* ¶ 32.  Displayed immediately below that button was a conspicuous disclosure informing Plaintiff that "[b]y clicking the button above, you agree to be contacted by LowerMyBills, at the address entered above for promotional emails *and consent, electronically via E-sign, to the LMB Lending **Terms of Use**, **Privacy Policy**,* and Consent to Doing Business

8

Electronically." *Id.* ¶ 33 (emphasis added).[3]   The phrase "Terms of Use" was a hyperlink that was underlined and appeared in blue text. *Id.* Clicking on the words "Terms of Use" took the consumer to LMB's complete Terms of Use, which included the subject arbitration provision discussed in Section D, *infra*, enabling the consumer to review them before clicking the "Calculate" button to agree to them. *Id.*

On the next page, Plaintiff typed in additional personal information, including his cellphone number ending in -0114. *Id.* ¶ 34.  Immediately below the phone number box where he did so was a disclosure language stating:  "Enter your phone number above to receive automated and/or pre-recorded calls only from us and/or the providers that are matched to you." *Id.* Ex. 3 p. 4.  Below this disclosure, Plaintiff clicked a green "Calculate your FREE results" button.   Viner Decl. ¶ 34. Immediately below that button was another conspicuous disclosure informing Plaintiff that "[b]y clicking the button above, you express your understanding and consent, electronically via E-sign," to the following:

> 1. To be matched with, and contacted by, up to 5 participants in the **LMB Provider Network** about mortgage and financial services products, and consent (not required as a condition to purchase a good/service) for us and them to contact you for marketing purposes . . . via telephone at the phone number provided above, on mobile devices (including SMS and MMS), and email, even if you are on a corporate, state or national Do Not call

---

[3] Displayed below this language was the text:  "Featured Provider Quicken Loans" (now known as "Rocket Mortgage"). *Id.* ¶ 33.

Registry.  You may revoke your consent at any time. As an alternative, you may contact us by email at customercare@coredigital.com.

2. To the LMB Lending **Terms of Use**, **Privacy Policy**, and Consent to Doing Business Electronically.

*Id.* ¶ 35 (emphasis in original).  The words "LMB Provider Network" were hyperlinked to a list identifying Quicken Loans as one of the lenders in the "LMB Provider Network." *Id.* ¶ 37.  The phrase "Terms of Use" was also a hyperlink that was underlined and appeared in blue text. *Id.* ¶ 36.  Again, clicking on the words "Terms of Use" took the consumer to LMB's full-text Terms of Use (including the subject arbitration provision), which the consumer could again review, before clicking the green "Calculate your Free Results" button to confirm agreement to them. *Id.* ¶ 36.  Thus, by clicking the "Calculate" button and the "Calculate your FREE results" button to use LMB's free service, Plaintiff twice agreed to LMB's Terms of Use setting forth "the terms and conditions applicable to [his] use of the LMB Website and the products and services provided through or in connection with the LMB Website." *Id.* Ex. 5 p. 1.

After clicking "Calculate your FREE results," Plaintiff was shown a page informing him that he had been matched with Quicken Loans.  Viner Decl. ¶ 38.

\*     \*     \*

In sum, during each of the three online submissions to LowerMyBills.com, Dahdah was repeatedly presented with clear and conspicuous disclosures and

hyperlinks to LMB's Terms of Use and repeatedly agreed to the Terms of Use through his interactions with the website.[4]

**D.    LMB's Terms of Use**

LMB's Terms of Use have not changed since October 2020 and were the same during each of Dahdah's visits to the website on October 21, 2020, February 18, 2021, and February 19, 2021.  Viner Decl. ¶ 41.  As relevant to this Motion, one of the express terms and conditions in LMB's Terms of Use to which Plaintiff five times agreed was a mandatory arbitration provision.   That arbitration provision provided as follows:

> 2.  **ARBITRATION.**  YOU UNDERSTAND AND AGREE THAT **ALL   CLAIMS,   DISPUTES   OR   CONTROVERSIES BETWEEN   YOU   AND   LMB,   AND   ITS   PARENTS, AFFILIATES,   SUBSIDIARIES   OR   RELATED COMPANIES**, INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, **CLAIMS BASED UPON ANY FEDERAL,   STATE   OR   LOCAL   STATUTE,   LAW, ORDER, ORDINANCE OR REGULATION**, AND THE ISSUE OF ARBITRABILITY, **SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION** AT A LOCATION DETERMINED   BY   THE   ARBITRATOR.   **ANY CONTROVERSY   CONCERNING   WHETHER   A DISPUTE IS ARBITRABLE SHALL BE DETERMINED**

---

[4] To assist the Court in its consideration of this Motion, Rocket Mortgage submits herewith a video of the current LowerMyBills.com submission forms and flow on a mobile device.  Viner Decl. Ex. 4.  Although the LowerMyBills.com website has had minor changes since February 2021, the appearance of the text on the current website is representative of its appearance in February 2021 and October 2020 when Plaintiff used the website.  The video demonstrates that the Terms of Use hyperlinks were clearly presented in blue, underlined font and in close proximity to the buttons Plaintiff clicked.  Viner Decl. ¶ 39, Ex. 4.

**BY THE ARBITRATOR AND NOT BY THE COURT**. . . . **NEITHER YOU NOR LMB SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CONSUMERS OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR MEMBER OF A CLASS** OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.  THE PARTIES **VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL**.

*Id.* ¶ 41 & Ex. 5 ¶ 2 (emphases added).  These terms were clearly presented in all capital letters to highlight their importance.

Through Plaintiff's October 21, 2020, February 18, 2021, and February 19, 2021 submissions to the LowerMyBills.com website, Plaintiff agreed *five* separate times to LMB's Terms of Use and the mandatory arbitration provision.

**III.   THE LAWSUIT**

Following each of Plaintiff's three submissions at LowerMyBills.com seeking mortgage refinance information from Rocket Mortgage (and others), LMB provided Rocket Mortgage with the information Plaintiff had submitted on LMB's website. Viner Decl. ¶¶ 3, 20, 28, 38; Courtney Decl. ¶¶ 7-9.  After receiving this information from LMB, Rocket Mortgage contacted Plaintiff by telephone to respond to his request for mortgage refinance information.  Courtney Decl. ¶ 10.

On August 11, 2022, despite having agreed to arbitrate any TCPA claims against Rocket Mortgage arising from or relating to his use of LMB's services (and to arbitrate on an individual, non-class basis), Plaintiff filed a class action complaint

alleging violations of the TCPA.  There, he claims that, by calling his cellphone in response to his submissions on LMB's website, Rocket Mortgage somehow violated the TCPA.  Compl. ¶¶ 7-10, ECF No. 1, PageID.1-2.

## **LEGAL STANDARD**

The FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects both a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and internal quotation marks omitted).  In passing the FAA, Congress established a strong federal policy in favor of arbitration, "notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) ("[A] party may not renege on [an agreement to arbitrate] absent the most extreme circumstances.").  In short, federal law mandates that federal courts "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses*, 460 U.S. at 24–25.

When considering a motion to compel arbitration, "the Court [] 'must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement.'" *Jones-Bey v. JPay Inc.*, No. 2:17-cv-12545, 2019 WL 6337770, at *2 (E.D. Mich. Oct. 10, 2019) (quoting *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 561 (6th Cir. 2008)), *report and recommendation adopted*, No. 17-12545, 2019 WL 6329666 (E.D. Mich. Nov. 26, 2019).  "The burden is on the party opposing arbitration to show that the agreement is not enforceable."  *E.g.*, *Shirley*, 2022 WL 2541123, at *3; *Blanton v. Domino's Pizza Franchising LLC*, No. 18-13207, 2019 WL 5543027, at *1 (E.D. Mich. Oct. 25, 2019), *aff'd*, 962 F.3d 842 (6th Cir. 2020).

## **ARGUMENT**[5]

The LMB Terms of Use constitute a valid arbitration agreement that requires Plaintiff to arbitrate (not litigate) the TCPA claims he purports to pursue in this lawsuit.  "LMB's notice of terms was conspicuous such that a reasonably prudent

---

[5] While this Motion is directed to Dahdah's individual claim, Rocket Mortgage expressly reserves its rights (i) to compel arbitration of the claims of some or all of the members of any class that may be certified in this action, and (ii) to demonstrate that arbitration agreements and class action waivers operate to preclude putative class members from participating in this lawsuit.  These and other similar issues are premature at this initial stage of the litigation, where no class has been certified and plaintiff has not filed any motion for class certification. *See Currithers v. FedEx Ground Package Sys., Inc.*, 2012 WL 458466, at *8 (E.D. Mich. Feb. 13, 2012).

Internet user would have seen it," and Dahdah "unambiguously manifested his assent to LMB's Terms of Use by clicking the . . . buttons." *Shirley*, 2022 WL 2541123, at *7, *8. Accordingly, the record evidence demonstrates that Dahdah entered into a valid and enforceable arbitration agreement with LMB and Rocket Mortgage when he agreed five times to LMB's Terms of Use and voluntarily used LMB's services to request information about a mortgage refinance from Rocket Mortgage.

## I. PLAINTIFF AFFIRMATIVELY AGREED TO LMB'S TERMS OF USE AFTER BEING ON INQUIRY NOTICE OF THEM.

As demonstrated above on pages 3-12, *supra*, the record evidence here reveals that Dahdah affirmatively agreed to LMB's Terms of Use, including the mandatory arbitration provision, on five separate occasions during his three separate visits to LowerMyBills.com. "Because arbitration agreements are fundamentally contracts" they are subject to "the applicable state law of contact formation." *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011) (citation omitted). And "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted). Under the law of California, which is Dahdah's alleged current residence (Compl. ¶ 17, ECF No. 1, PageID.3), LMB's place of business, and the place where the parties agreed the agreement was entered into, (Viner Decl. Ex. 5 ¶ 2), clickwrap or hybrid clickwrap agreements like LMB's Terms of Use are enforceable where: "(1)

15

the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Shirley*, 2022 WL 2541123, at \*4 (citation omitted); *see also Lee v. Ticketmaster L.L.C.,* 817 F. App'x 393, 394 (9th Cir. 2020) (inquiry notice satisfied when the terms and conditions are posted through a hyperlink that is located underneath the button that the user clicked); *accord e.g.*, *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1275 (M.D. Tenn. 2020) ("Federal courts have consistently upheld clickwrap agreements."). Consistent with the *Shirley* decision, the record evidence here again demonstrates that both of these requirements for enforceability are met.[6]

On October 21, 2020, February 18, 2021, and on February 19, 2021, Dahdah visited LowerMyBills.com. At that site, Dahdah voluntarily filled out informational forms containing, among other things, his phone number and property address. Viner Decl. ¶ 8; Hennecken Decl. Exs. 1-2. During the October 21, 2020 and February 19, 2021 visits, Dahdah also voluntarily clicked both the "Calculate" and "Calculate your FREE results" buttons on two different pages to confirm his agreement to LMB's Terms of Use. Viner Decl. ¶¶ 14-17, 32-35. On February 18,

---

[6] The result would be the same under Michigan law. *Jones-Bey*, 2019 WL 6337770, at \*5.

16

2021, Dahdah voluntarily clicked the "Calculate your results" button to confirm (again) his agreement to LMB's Terms of Use. *Id.* ¶¶ 25-26. Those Terms of Use set out "the terms and conditions applicable to [his] use of the LMB Website." *Id.* Ex. 5 p. 1. And as the record evidence demonstrates, LMB's website expressly stated in clear and conspicuous disclosures, in multiple places, that clicking on those buttons confirmed Plaintiff's agreement to LMB's Terms of Use. Viner Decl. ¶¶ 11, 21, 29. Plaintiff thus affirmatively acknowledged his agreement to LMB's Terms of Use multiple times as part of his use of LMB's website and services.[7]

Under similar circumstances, this and other federal courts consistently hold that such affirmative acknowledgement in the face of conspicuous disclosures results in a valid contract. Indeed, as noted above, the same LMB Terms of Use were recently enforced when this Court granted Rocket Mortgage's Motion to Compel Arbitration in a suit involving nearly identical facts. *Shirley*, 2022 WL 2541123, at *7-8. In *Shirley*, Judge Cox held that "LMB's notice of terms was conspicuous such that a reasonably prudent Internet user would have seen it." *Id.* at *7. He came to this conclusion "because the hyperlink to the Terms of Use was underlined and in a blue contrasting color to the rest of the grey text. . . . A user of the website (such as

---

[7] Because Plaintiff visited the website three times, there is little doubt that he also had *actual* notice of LMB's Terms of Use. Rocket Mortgage reserves its right, to the extent this Motion is denied (and it should not be), to renew the motion with the benefit of discovery to establish actual notice.

Shirley) would clearly see the hyperlinks directly below the second and third buttons before he clicked on them." *Id.* Judge Cox further concluded that by clicking the "Calculate" and "Calculate your FREE results" buttons, the plaintiff "unambiguously manifested his assent to LMB's Terms of Use." *Id.* at *6, *8. This Court held that the plaintiff had inquiry notice of LMB's Terms of Use and, accordingly, the mandatory arbitration provision contained in those Terms of Use was enforceable. *Id.* at *8.[8] The same exact reasoning and conclusion applies here. Dahdah visited the same website as the plaintiff in *Shirley* and similarly clicked the same two buttons to manifest his assent to the LMB Terms of Use. Moreover, here, Dahdah's assent to LMB's Terms of Use is even more pronounced because he submitted his information to the LMB website ***three separate times***, on October 21, 2020, February 18, 2021 and February 19, 2021, and expressly confirmed his agreement to LMB's Terms of Use on each occasion.

This Court should follow the *Shirley* decision by again enforcing LMB's Terms of Use and granting this Motion. This conclusion is reinforced by the numerous federal court decisions enforcing arbitration provisions under factual circumstances similar to those present here. *See e.g., Ticketmaster*, 817 F. App'x at

---

[8] The LMB Terms of Use were also upheld and enforced by the Central District of California in Orders from two different judges granting defendants' motions to compel arbitration. *Rodriguez v. Experian Servs. Corp.*, No. 2:15-cv-03553-R-MRW (C.D. Cal. Oct. 5, 2015), ECF No. 43; *Hill v. ActiveProspect, Inc.*, No. 5:20-cv-01351-JGB-KK (C.D. Cal. July 16, 2021), ECF No. 90.

394 (affirming enforcement of an arbitration agreement when customers clicked a "Sign In" button and, "three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use.'"); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (enforcing arbitration agreement when text below "Sign In" button read "By clicking Sign In, you agree to the Turbo Terms of Use"); *Pizarro v. QuinStreet, Inc.*, No. 22-02803, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (compelling arbitration when consumer clicked "See My Rates" button above disclosure stating that clicking the button constituted assent to terms).

## II.   ROCKET MORTGAGE IS ENTITLED TO ENFORCE THE LMB TERMS OF USE.

As this Court concluded (correctly) in *Shirley*, Rocket Mortgage is entitled to enforce the mandatory arbitration provision in LMB's Terms of Use.  2022 WL 2541123, at *8.  "[T]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement."  *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citation omitted)).  California law allows non-signatories to enforce an arbitration agreement against a signatory as a third-party beneficiary, or pursuant to equitable estoppel principles.  See *Franklin*, 998 F.3d at 876; *Gilbert v. Bank of Am.*, No. C 13-01171 JSW, 2015 WL 12953229, at *4 (N.D. Cal. Jan. 12, 2015); *Garcia v. Pexco, LLC*, 217 Cal. Rptr. 3d

793, 797 (Cal. Ct. App. 2017).  Both circumstances are present here.

**A. Rocket Mortgage Is a Third-Party Beneficiary.**

First, Rocket Mortgage is entitled to enforce the arbitration agreement against Dahdah because it is a third-party beneficiary of the agreement between Dahdah and LMB.  A non-signatory may assert rights as a third-party beneficiary "if the parties to the agreement intended the contract to benefit the third party."  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013).  "When an arbitration clause provides that it covers claims involving particular parties, the agreement has been made expressly for the benefit of those parties."  *Hajibekyan v. BMW of N. Am., LLC*, 839 F. App'x 187, 188 (9th Cir. 2021).  Here, the Terms of Use were expressly intended to benefit Rocket Mortgage.  The arbitration agreement in the LMB Terms of Use requires arbitration of "ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS . . . <u>AFFILIATES</u>, SUBSIDIARIES, OR <u>RELATED COMPANIES</u>."  Viner Decl. Ex. 5 ¶ 2 (emphases added).  This language is unambiguous—the parties clearly intended that the arbitration agreement would benefit not only LMB, but all of its affiliates and related companies.  Rocket Mortgage is such a company because it is an LMB affiliate and shares the same parent company as LMB, RKT Holdings, LLC.  Viner Decl. ¶ 3; Courtney Decl. ¶ 3; *Shirley*, 2022 WL 2541123, at *8 (allowing Rocket Mortgage to enforce LMB's Terms of Use as third-party beneficiary); *Hajibekyan, LLC*, 839 F. App'x at 188

20

(non-signatory affiliate was third-party beneficiary because arbitration agreement encompassed "any claim" "between me and you or your employees, officers, directors, *affiliates* . . .") (emphasis in original); *Lei v. Amway Corp.*, No. 14-04022, 2014 WL 12596787, at *11 (C.D. Cal. July 23, 2014); *Sun Moon Star Advanced Power, Inc. v. Chappell*, 773 F. Supp. 1373, 1376 (N.D. Cal. 1990) ("whether companies are affiliates depends upon [whether] companies are owned by the exact same individuals."); Affiliate Definition, *Black's Law Dictionary* (11th ed. 2019).

That Rocket Mortgage is an intended third-party beneficiary of the arbitration agreement is reinforced by the facts that (i) the LMB online submission forms Dahdah completed expressly stated that "[d]ata is collected by LowerMyBills on behalf of Quicken Loans" (n/k/a Rocket Mortgage) (Viner Decl. ¶ 44); (ii) Dahdah was informed that he was matched to Quicken Loans; and (iii) Quicken Loans is expressly identified as part of the LMB Provider Network and in the Terms of Use as an entity which may contact Plaintiff with mortgage refinance information.  Viner Decl. ¶¶ 19, 37.  Where the Plaintiff's claims arise from his use of LMB's services, and LMB's website and Terms of Use expressly disclosed that it may provide information to Rocket Mortgage, there can be no genuine dispute that the arbitration provision was intended to (and expressly does) benefit Rocket Mortgage.  *See, e.g.*, *Ege v. Express Messenger Sys. Inc.*, 745 F. App'x 19, 20 (9th Cir. 2018) (defendant was third-party beneficiary where "[plaintiffs'] performance under the agreements

21

necessarily and directly benefitted [defendant]"); *Labajo v First Int'l Bank & Tr.*, No. 14-00627, 2014 WL 4090527, at *7 (C.D. Cal. July 9, 2014).

As it is an actual and intended third-party beneficiary of the arbitration agreement between LMB and Dahdah, Rocket Mortgage is entitled to enforce that agreement. *See Shirley*, 2022 WL 2541123, at *8; *Ege*, 745 F. App'x at 20.

## B. Dahdah Is Estopped from Denying Application of The Agreement.

Rocket Mortgage is also entitled to enforce the arbitration agreement under the principles of equitable estoppel. A nonsignatory may enforce an arbitration agreement "when the claims are intimately founded in and intertwined with the underlying contract obligations." *Franklin*, 998 F.3d at 873 (citation and internal quotation marks omitted).

Here, Dahdah's TCPA claim against Rocket Mortgage is "intimately founded in and intertwined with" his use of LMB's services, consent to calls from Rocket Mortgage, and agreement to LMB's Terms of Use. Dahdah gave his consent to be contacted by Rocket Mortgage by phone or email during his October 2020 and February 2021 visits to LowerMyBills.com. *See supra* pp. 3-12. He now claims that Rocket Mortgage contacted him illegally. Compl. ¶ 22, ECF No. 1, PageID.3. Resolution of Dahdah's claim thus necessarily requires this Court to consider questions that are "intimately . . . intertwined" with Dahdah's agreements to LMB's TCPA consent disclosures on the LMB website and in LMB's Terms of Use.

Dahdah's TCPA claim, therefore, cannot be separated from the Terms of Use, and the arbitration provision in the Terms of Use must be enforced.  *See Franklin,* 998 F.3d at 874 (affirming that plaintiff was equitably estopped from avoiding arbitration with nonsignatory); *Shivkov v. Artex Risk Sols., Inc.,* 974 F.3d 1051, 1070 (9th Cir. 2020) (allowing nonsignatories to compel arbitration; "allegations about Defendants' misconduct [] presume and 'intimately rel[y]' on the existence of the Agreements") (citation omitted), *cert denied*, 141 S. Ct. 2856 (2021).[9]

Further, the arbitration agreement should be enforced as a matter of equity. After submitting his information, and consistent with LMB's disclosure about its services, Dahdah was matched with providers of mortgage services and received mortgage loan refinance information.  Viner Decl. ¶¶ 20, 28, 38; Courtney Decl. ¶¶ 7-10.  Dahdah cannot take advantage of the benefits of contracting with LMB, but then seek to avoid the arbitration agreement.  *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.") (citation and internal quotation marks omitted).

## III.   WHILE THE ISSUE IS EXPRESSLY RESERVED TO THE ARBITRATOR, THIS DISPUTE DOES NOT FALL OUTSIDE THE ARBITRATION AGREEMENT.

---

[9] *See also Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (collecting cases; "a signatory was bound to arbitrate with a nonsignatory … because of 'the close relationship between the entities involved [and] the relationship of the alleged wrongs to the nonsignatory's obligations and duties").

Because there is a valid arbitration agreement, enforceable by Rocket Mortgage, the only remaining question is whether Plaintiff's claims here fall within the substantive scope of the arbitration provision.  Under the express terms of the agreement, however, that question is reserved for the arbitrator.  Specifically, the Terms of Use require that "ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT."  Viner Decl. Ex. 5 ¶ 2.  When the parties have contracted to delegate the arbitrability determination to an arbitrator, courts are not permitted to "short-circuit the process and decide the arbitrability question themselves."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527–28 (2019).  Therefore, because there is a valid arbitration agreement that Rocket Mortgage is entitled to enforce, this Court should compel arbitration and permit the arbitrator to resolve any disputes about arbitrability.

Even assuming this Court may properly consider the arbitrability question, however, the LMB Terms of Use confirms that it unquestionably "encompasses the dispute at issue."  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). That provision broadly covers:

> ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES, INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION.

24

Viner Decl. Ex. 5 ¶ 2.  Agreements to arbitrate "[a]ny dispute, controversy or claim" are "broad and far reaching." *Chiron*, 207 F.3d at 1131. Dahdah's TCPA claim against an LMB affiliate and related entity falls squarely within this broad agreement to arbitrate "ALL CLAIMS," including federal statutory claims against LMB and its affiliates. *See Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1204 (N.D. Cal. 2015) ("[T]he party opposing arbitration . . . bears the burden of proving any defense.") (citation and internal quotation marks omitted), *aff'd in part, rev'd in part, remanded*, 848 F.3d 1201 (9th Cir. 2016).  Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25.

## CONCLUSION

For the foregoing reasons, Rocket Mortgage respectfully requests that this Court compel Dahdah's individual claim to arbitration and dismiss the Complaint.

Respectfully submitted,

/s/ W. Kyle Tayman
_____
W. Kyle Tayman
Brooks R. Brown
Christina L Hennecken
GOODWIN PROCTER LLP
BBrown@goodwinlaw.com
KTayman@goodwinlaw.com
Chennecken@goodwinlaw.com

*Counsel for Rocket Mortgage, LLC*

Jeffrey M. Thomson (P72202)
jthomson@morganrothlaw.com
MORGANROTH AND MORGANROTH PLLC
344 North Old Woodard Avenue, Suite 200
Birmingham, MI  48009
Tel.: +1 248 864 4000
Fax: +1 248 864 4001

Dated:  October 11, 2022

## <u>LOCAL RULE CERTIFICATION</u>

I, W. Kyle Tayman, certify that Rocket Mortgage, LLC's Motion to Compel

Arbitration and Dismiss the Complaint complies with Local Rule 5.1(a), including:

double-spaced (except for quoted materials and footnotes); at least one-inch margins

on the top, sides, and bottom; consecutive page numbering; and type size of all text

and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional

fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate

length pursuant to Local Rule 7.1(d)(3)(a).


/s/ W. Kyle Tayman
W. Kyle Tayman

1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 11, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.  The video exhibit that was uploaded via the CM/ECF media upload was served on counsel by e-mail at amy.ginsburg@lawhq.com and efilings@ginsburglawgroup.com.

/s/ W. Kyle Tayman
W. Kyle Tayman