UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| Michael Dahdah, | ) | Case No. 2:22-cv-11863-SJM/DRG |
| | ) | |
| Plaintiff, | ) | Hon. Judge Stephen J. Murphy, III |
| | ) | U.S. District Judge |
| v. | ) | Hon. David R. Grand |
| | ) | U.S. Magistrate Judge |
| Rocket Mortgage, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>OPPOSITION TO MOTION TO DISMISS</u>**

TABLE OF AUTHORITIES ................................................................................................. ii

I.     INTRODUCTION ................................................................................................. 1

II.    FACTS ................................................................................................................. 3

III.   LAW AND ARGUMENT ...................................................................................... 4

       A.     The Calls Were Adequately Plead as Telemarketing Calls ..................................... 4

       B.     Plaintiff has Adequately Plead a Do Not Call Request Under 47 U.S.C.
              § 227(c) and 47 C.F.R. § 64.1200(d) ..................................................... 6

              1.     The Do Not Call Stop Request Was Adequately Plead. ............................ 7

              2.     Whether a Do Not Call Request is Timely Honored Is a Question
                     of Fact. ..................................................................................... 8

       C.     Plaintiff has Plead that Rocket Lacked the Requisite Procedures ......................... 9

       D.     47 C.F.R. § 64.1200(a)(7), Promulgated Under 47 U.S.C. §§ 227(b) and
              227(c), Provides a Private Right of Action and Was Sufficiently Plead .............. 10

              1.     A Private Right of Action Exists Under 47 C.F.R. § 64.1200(a)(7)......... 11

                     a.     The Regulations for 47 U.S.C. § 227(d) are found in 47
                            C.F.R. § 64.1200(b), not 47 C.F.R. § 64.1200(a). ...................... 11

                     b.     47 C.F.R. § 64.1200(a)(7) Protects the Same Interests as
                            Those Found in 47 U.S.C. §§ 227(b) and 227(c) which
                            Each Contain a Private Right of Action....................................... 13

              2.     Plaintiff has Plead a Violation of 47 C.F.R. § 64.1200(a)(7). .................. 17

IV.    CONCLUSIONS.................................................................................................. 18

## **TABLE OF AUTHORITIES**

### **Cases**

*Adam v. CHW Grp., Inc*., No. 21-CV-19-LRR, 2021 WL 7285905
(N.D. Iowa Sept. 9, 2021) ............................................................................ 9

*Anderson v. Catalina Structured Funding, Inc.,* No. 1:21-CV-197, 2021 WL 8315006
(W.D. Mich. Dec. 21, 2021) , report and recommendation adopted, No. 1:21-CV-197,
2022 WL 3643733 (W.D. Mich. Aug. 24, 2022) ........................................... 4

*Bostic v. Michael Andrews & Assocs., LLC*, No. 21-CV-10419,
2021 WL 4889591 (E.D. Mich. Oct. 19, 2021) ............................................. 6

*Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, No. 22-10229,
2022 WL 3130225 (E.D. Mich. Aug. 4, 2022) .............................................. 4

*Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011) .............................. 2, 6, 9, 11, 12

*Fishman v. Mediastratx, LLC*,  No. 2:20-CV-83-D,
2021 WL 3559639 (E.D.N.C. Aug. 10, 2021) ............................................. 10

*Gill v. Align Tech. Inc.,* No. 21-CV-631-JPS-JPS,
2022 WL 1540016 (E.D. Wis. May 16, 2022) ............................................ 8, 9

*Gold v. Ocwen Loan Servicing, LLC*, No. 2:17-CV-11490,
2017 WL 6342575 (E.D. Mich. Dec. 12, 2017) ............................................ 8

*Gulden v. Quicken Loans Inc*., No. CV-16-00960-PHX-ROS,
2016 WL 9525223 (D. Ariz. May 31, 2016) ................................................. 5

*Moore v. Pro Custom Solar LLC*, No. 21 C 4395,
2022 WL 1092186 (N.D. Ill. Apr. 12, 2022) .............................................. 10

*Nece v. Quicken Loans, Inc.*, No. 8:16-cv-2605-T-23CPT,
2018 WL 1326885 (M.D. Fla. Mar. 15, 2018) .............................................. 2

*Persichetti v. T-Mobile USA, Inc*., No. 1:19-CV-02424-JPB,
2020 WL 4811003 (N.D. Ga. Aug. 17, 2020) ............................................... 9

### **Statutes**

47 C.F.R. § 64.1200(a)(7) ......................................................................... 2, 15

47 C.F.R. § 64.1200(c) ................................................................................. 1

47 C.F.R. § 64.1200(c)(1) ............................................................................. 2

47 C.F.R. § 64.1200(c)(2) ............................................................................. 1

47 C.F.R. § 64.1200(d) .............................................................................. 2, 7

47 C.F.R. § 64.1200(d)(3) ............................................................................ 8

47 U.S.C. §§ 227(b) .............................................................................. 13, 16

47 U.S.C. §§ 227(c)(1)............................................................................................ 13, 14

**Other Authorities**

*In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 2003 WL 21517853 ("2003 Order")................................. 14, 15, 17

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 1992 WL 690928 ("1992 Order")........................ 12

*In the Matter of the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 2736, 1992 WL 695438........................................................................................................................ 12

## I.       INTRODUCTION

Plaintiff Michael Dahdah ("Michael" or "Plaintiff"), whose number was on the National Do Not Call Registry, received at least eight calls from Defendant Rocket Mortgage ("Rocket" or "Defendant") from June 27 to June 30, 2022, including more than two calls after he told them to stop calling. (Complaint ¶¶ 21, 22, 27.)[1] Michael asserts that these calls were to sell mortgage products and services (Complaint ¶ 25), and Defendant admits the same in its Motion to Compel arbitration (pg. 12). Further, some of the calls were not answered by a live person within two seconds and had no opt-out mechanism. (Complaint, ¶ 26.) Thus, they were abandoned. Some of the calls happened around 5:00 a.m., waking Michael up. (Complaint, ¶ 23.)

Plaintiff asserts four claims under the TCPA. Each claim has facts to support it and make it plausible. In the First Cause of Action, Plaintiff asserts that Defendant made telemarketing calls to him while he was on the National Do Not Call Registry ("DNCR"). Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the DNCR. 47 C.F.R. § 64.1200(c). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Plaintiff has plead Rocket made at least two calls that were trying to sell him mortgage products and were made while his number was registered on the Do Not Call Registry.

In the Second Cause of Action, Plaintiff asserts that Defendant failed to honor direct Do Not Call requests. The FCC issued regulations prohibiting persons or entities from initiating any call for telemarketing purposes to a residential telephone subscriber unless the person or entity

---

[1] Michael has submitted a declaration with facts in support of his opposition to Rocket's Motion to Compel Arbitration. Michael moves the Court to Amend his Complaint if the Court deems there are any deficiencies.

has instituted certain listed procedures for maintaining a do-not-call list. *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44 (6th Cir. 2011); 47 C.F.R. § 64.1200(d). "Relevant here, the regulations require the telemarketer to …; (3) honor a person's request not to be called, § 64.1200(d)(3)." *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44 (6th Cir. 2011). If a person makes a do-not-call request, the business must honor that request within a reasonable time from the date such request is made. See, *Nece v. Quicken Loans, Inc.*, No. 8:16-cv-2605-T-23CPT, 2018 WL 1326885, at *7 (M.D. Fla. Mar. 15, 2018) (concluding that there was a genuine dispute of material fact as to whether a business honored a plaintiff's do-not-call request in a reasonable amount of time, and the reasonableness of the business's response was for the jury to decide). Plaintiff plead that he requested the calls made to him that were trying to sell him mortgage products stop, but they continued, and he received more than two calls thereafter.

In the Third Cause of Action, Plaintiff asserts that Defendant violated 47 C.F.R. § 64.1200(a)(7) by not having an opt-out mechanism for answered calls trying to sell mortgage products where an agent of Rocket failed to respond to an answered call within two seconds. "A call is 'abandoned' if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting." 47 C.F.R. § 64.1200(a)(7). Whenever a call is abandoned, "the telemarketer or the seller must provide a prerecorded identification and opt-out message." *Id*. at 64.1200(a)(7)(i). Plaintiff has plead that some of the calls to him, trying to sell mortgage products, were not answered and there was no opt-out mechanism. Further, 47 C.F.R. §64.1200(a)(7) provides a private right of action.

In the Fourth Cause of Action, Plaintiff asserts that he was called at times proscribed by the TCPA. 47 C.F.R. § 64.1200(c)(1) provides that: "No person or entity shall initiate any telephone solicitation to: (1) Any residential telephone subscriber before the hour of 8 a.m. or

after 9 p.m. (local time at the called party's location)." Plaintiff plead that he received calls trying to sell mortgage products at 5:00 a.m.

Ignoring these well plead facts, Defendant asserts that Plaintiff has failed to adequately plead his case and filed a Motion to Dismiss. That Motion should be denied.

## II.    FACTS

The following facts appear in the Complaint in the paragraphs as numbered:

20.    Michael is the residential subscriber of the cell phone number 310-951-0114 and has been for many years. Michael uses this number for personal use and does not use it in any business.

21.    Michael registered his number on the National Do Not Call Registry in 2017.

22.    Rocket made at least eight calls to Michael's cell phone between June 27, 2022, and June 30, 2022. Michael may well have received many calls before June 27th.

23.    Some of the calls happened around 5am in the morning, waking up Michael.

24.    Michael is not now, and never has been, a customer of Rocket.

25.    Rocket made the calls for the purpose of selling mortgage products and services.

26.    When Michael answered the calls no one responded for more than 2 seconds, and no message played. Sometimes nobody was on the other end of the call.

27.    Michael told Defendant to stop calling him multiple times, yet he continued to receive calls.

30.    Michael is the sole user of his phone number. Michael has never authorized anyone else to use his number.

31.    Michael never provided his phone number to Rocket and never agreed to Rocket contacting him in any way.

32.    Many people have reported calls from Rocket without consent.[2]

## III.    LAW AND ARGUMENT

### A.    The Calls Were Adequately Plead as Telemarketing Calls

"The TCPA defines a solicitation as 'the initiation of a telephone call ... [to encourage]

the purchase or rental of ... property, goods, or services.'" *Chapman v. Nat'l Health Plans &*

*Benefits Agency, LLC*, No. 22-10229, 2022 WL 3130225, at *7 (E.D. Mich. Aug. 4, 2022).

> As one court observed, the only sensible reading of these definitions is that the caller
> must encourage the recipient of the call to purchase, rent, or invest "in, [the caller's]
> property, goods, or services," as "[a]ny other reading would include absurd results by
> sweeping into a consumer protection statute prohibition against a range of ordinary social
> interactions." (cite omitted) In this regard, the FCC has distinguished calls constituting a
> telephone solicitation, for example, "calls by real estate agents to property owners for the
> purpose of offering their services to the owner," from calls that are not solicitations, for
> example, a real estate agent's call to an owner of a listed property to discuss a potential
> sale to the buyer the agent represents.

*Anderson v. Catalina Structured Funding, Inc.,* No. 1:21-CV-197, 2021 WL 8315006, at *3

(W.D. Mich. Dec. 21, 2021), report and recommendation adopted, No. 1:21-CV-197, 2022 WL

3643733 (W.D. Mich. Aug. 24, 2022). The calls made by Rocket offering to sell mortgage

products clearly are telephone solicitations and marketing calls.

In *Anderson v. Catalina Structured Funding, Inc.,* No. 1:21-CV-197, 2021 WL 8315006,

at *3 (W.D. Mich. Dec. 21, 2021), the Court addressed the issue of whether the offering of

structured settlement services was telemarketing. The definition of telemarketing can be broad.

The Court stated: "Here, though, where Plaintiff has expressed no interest in selling, and

Defendant is in the business of offering liquidity to structured settlement holders, Defendant may

be offering to make a purchase, but it is also marketing a service. To suggest it is not is too

clever by half." *Id*. at No. 1:21-CV-197, 2021 WL 8315006, at *6 (W.D. Mich. Dec. 21, 2021),

---

[2] Michael's Declaration in Opposition to Arbitration adds additional facts.

report and recommendation adopted, No. 1:21-CV-197, 2022 WL 3643733 (W.D. Mich. Aug. 24, 2022). Rocket was offering mortgage loan services and therefore telemarketing.

Michael asserts in paragraph 25 of his Complaint that Defendant made the calls for the purpose of selling mortgage products and services. This is not a conclusory allegation that tracks the statutory language. It is a specific allegation that Rocket was trying to sell him something – mortgage products and services. Yet, Rocket still moves the Court to dismiss the First, Second and Fourth Causes of Action of the Complaint because they assert there is no allegation that the calls were for telemarketing.

While it is bad enough to ignore the facts as set forth in the Complaint, it is even worse since Rocket admits in its Motion to Compel Arbitration that the calls were telemarketing. At page 12 of the Motion to Compel Arbitration, Rocket admits: "… Rocket Mortgage contacted Plaintiff by telephone to respond to his request for mortgage refinance information. Courtney Decl. ¶ 10." Thus, there is no doubt the calls were telemarketing and were plausibly plead as calls to sell services.

Other courts have rejected Rocket's arguments. In *Gulden v. Quicken Loans Inc*., No. CV-16-00960-PHX-ROS, 2016 WL 9525223, at *2 (D. Ariz. May 31, 2016), Gulden alleged the calls were "for the purpose of encouraging the purchase or investment in property, goods or services." The Court held that while this language is taken from the statute, it is sufficient to support a claim for relief. "Quicken Loans does not elaborate on why including the details of the proposed purchase or investment would be helpful or necessary and the Court will not impose such a requirement here." *Id.* Plaintiff herein has plead much more.

Defendant's other arguments are likewise not persuasive. The fact that Michael doesn't have any relationship with Rocket shows that they were telemarketing calls. Why else would

Rocket be calling? Further, just because no one answered some of the calls doesn't mean the calls were not identified as telemarketing calls when he did speak with someone. And Rocket admits that they were telemarketing calls.

Rocket cites to cases where there was no identification of the defendant; but here, not only did Rocket identify itself on the calls that were answered, but the from number was called back and was answered by someone saying it was Rocket. Finally, the fact that Plaintiff alleges that Rocket was trying to reach someone else has nothing to do with whether the calls were telemarketing calls. Plaintiff learned this fact when the from number was called back, not on the direct calls from Rocket.

Defendant cites to cases dismissing claims for lack of proper pleading that have no resemblance to the facts of this case. Most confusing is the citation to *Bostic v. Michael Andrews & Assocs., LLC*, No. 21-CV-10419, 2021 WL 4889591, at *5 (E.D. Mich. Oct. 19, 2021). While designated *cf*, Defendant appears to be trying to imply that a Michigan court had held that details about the calls are required. But *Bostic* was an FDCPA case and not a TCPA case, and the pleading requirements therein are irrelevant to the issues before this Court.

Plaintiff has adequately plead telemarketing, and Defendant's first argument for dismissal should be rejected.

**B.    Plaintiff has Adequately Plead a Do Not Call Request Under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**

The federal regulations that implement 47 U.S.C. § 227(c) are contained in 47 C.F.R. § 64.1200(d). Those regulations require not only having a policy, but its implementation. The failure to implement is a violation and renders having a policy irrelevant. See *Charvat*, *infra*, ("Relevant here, the regulations require the telemarketer to …; (3) honor a person's request not

to be called, § 64.1200(d)(3).")  Here, Plaintiff asserts that Defendant failed to honor his do-not-call request.

47 C.F.R. § 64.1200(d) provides that:

(d)      No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has **instituted** procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1)      Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list. * * *

(3)      Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) **receives a request from a residential telephone subscriber not to receive calls** from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) **must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.** This period may not exceed thirty days from the date of such request. … **(emphasis added).**

### 1.    The Do Not Call Stop Request Was Adequately Plead.

47 C.F.R. § 64.1200(d) does not dictate the form do-not-call requests must take. Regardless, Plaintiff has plead that he told Defendant to stop calling him, yet he continued to receive calls. (Complaint, ¶ 27.)

This Court has rejected arguments similar to Rocket's.

Plaintiff's remaining TCPA claims survive the motion to dismiss. Defendant argues that Plaintiff has not properly pled revocation of consent because (1) the alleged oral requests to stop calling do not constitute revocation, and (2) Plaintiff's allegations are not specific enough to adequately state a claim. Both arguments are without merit. Although the TCPA and Sixth Circuit are silent on revocation, courts in this district have held that prior express consent under the TCPA is revocable **via an oral statement on the phone.** (cite omitted) **And a plaintiff does not need to allege specific dates and times of when he orally revoked consent**. (cite omitted) **Rather, Plaintiff's allegation that he told Defendant's agent to stop calling on multiple occasions is plausible and sufficiently specific**—especially when Defendant allegedly called over a thousand times in the span of several years. Id.

*Gold v. Ocwen Loan Servicing, LLC*, No. 2:17-CV-11490, 2017 WL 6342575, at *2 (E.D. Mich. Dec. 12, 2017) (emphasis added).

Thus, Plaintiff has plausibly plead that he told Defendant to stop calling.

### 2. Whether a Do Not Call Request is Timely Honored Is a Question of Fact.

Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. 47 C.F.R. § 64.1200(d)(3). Defendant argues that it timely stopped calling Plaintiff after receiving the stop request. But whether the calls were stopped in a reasonable time is a question of fact. While the statute provides that calls after thirty days are *per se* unreasonable, an unreasonable time can be much shorter. Courts have held that with current technology, calls may be able to be stopped instantaneously.

In fact, a court has held that a call within an hour of a do-not-call request may violate the statute. *Gill v. Align Tech. Inc.,* No. 21-CV-631-JPS-JPS, 2022 WL 1540016, at *3 (E.D. Wis. May 16, 2022) In *Gill*, Align argued that one call within an hour of requesting to be on a do-not-call list does not violate the TCPA as a matter of law. After stating that 47 C.F.R. § 64.1200(d)(3) states that a thirty-day delay in honoring do-not-call requests is *per se* unreasonable, it noted that the statute does not state that any shorter delay is *per se* reasonable. The Court then noted, like the case here, that the **plaintiff did not contend that Align lacks appropriate protocol – rather, it contended that Align does not honor a subscriber's do-not-call request.** The Court, in citing to the *Nece v. Quicken Loans* case, which held **the reasonableness of the business's response was for the jury to decide,** a case cited by Rocket, held:

This escalation in contact, seemingly in direct response to Plaintiff's requests to *stop* contact, plausibly indicates that Align violated the TCPA's regulations by failing to honor Plaintiff's do-not-call requests within a reasonable amount of time. *See Nece v. Quicken Loans, Inc.*, No. 8:16-cv-2605-T-23CPT, 2018 WL 1326885, at *7 (M.D. Fla. Mar. 15, 2018) (concluding that there was a genuine dispute of material fact as to whether a business honored a plaintiff's do-not-call request in a reasonable amount of time, and the reasonableness of the business's response was for the jury to decide). Indeed, if Align's system was such that it could easily and immediately remove a person from a call list, then perhaps **a jury would find that it was unreasonable to call that person within an hour of their do-not-call request. In any case, it is an issue for the fact-finding stage of this matter**.

*Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS-JPS, 2022 WL 1540016, at *4 (E.D. Wis. May 16, 2022) (emphasis added).

Other courts have held likewise. "…, Plaintiff's facts permit an inference that Defendant failed to honor Plaintiff's do-not-call request within a reasonable time as required by 47 C.F.R. § 64.1200(d)." *Persichetti v. T-Mobile USA, Inc.*, No. 1:19-CV-02424-JPB, 2020 WL 4811003 (N.D. Ga. Aug. 17, 2020). Thus, Plaintiff has adequately plead an untimely do not call request.

### C.    Plaintiff has Plead that Rocket Lacked the Requisite Procedures

Plaintiff has plead that he received more than two calls after several stop requests. This is more than sufficient to demonstrate a violation of 47 C.F.R. § 64.1200(d). Not only must Rocket have a policy, but it must implement that policy. *Charvat, infra*. Receiving calls after do not call requests plausibly states a claim that the necessary polices are not in place.

In *Adam v. CHW Grp., Inc*., No. 21-CV-19-LRR, 2021 WL 7285905, at *9 (N.D. Iowa Sept. 9, 2021), the plaintiff alleges that he asked the defendant to remove himself from its call list and stop contacting him, but that defendant failed to honor or abide by his opt-out requests and continued to call after he asked for the messages to stop. The Court held at *9:

In Buja, the district court addressed a similar situation, where the plaintiff alleged that the defendants "did not have reasonable practices and procedures in place to effectively prevent telephone solicitations ... as evidenced by its calls to [the p]laintiff who repeatedly requested [the d]efendants stop calling." (Cite omitted) Based on the plaintiff's allegations, the district court determined that the "factual allegations [were] sufficient to

9

raise a right to relief above the speculative level and state a plausible DNC claim." Id. (quotation omitted). Here, Adam requested that CHW stop calling him, CHW did not, and based on CHW's failure to stop calling him, Adam alleges that CHW violated the procedures required in 47 C.F.R. § 64.1200(d). Accepting the factual allegations in the First Amended Complaint as true and drawing all reasonable inferences in favor of Adam, the court finds that Adam has adequately alleged a DNC claim.

In *Moore v. Pro Custom Solar LLC*, No. 21 C 4395, 2022 WL 1092186 (N.D. Ill. Apr. 12, 2022), Moore asked to be placed on Momentum Solar's internal do-not-call list but continued to receive calls. The Court held at *5: "These allegations support the reasonable conclusion that either Momentum's staff were not properly trained in distributing and implementing the do-not-call policy, or Momentum did not have a written policy to distribute. Both actions are independently violations of Section 64.1200(d)."

In *Fishman v. Mediastratx, LLC*, No. 2:20-CV-83-D, 2021 WL 3559639, at *6 (E.D.N.C. Aug. 10, 2021), the Court held that calls received after a do not call request indicate a lack of a written policy for maintaining a do-not-call list, trained  personnel in using the do-not-call list, or actually maintained an internal do-not-call list. The Court denied the Motion for Judgment of the Pleadings.

Thus, Rocket's Motion to Dismiss related to the Do Not Call Claims also fails.

**D.      47 C.F.R. § 64.1200(a)(7), Promulgated Under 47 U.S.C. §§ 227(b) and 227(c), Provides a Private Right of Action and Was Sufficiently Plead**

Plaintiff asserts that Rocket failed to have an opt-out mechanism on calls that were not answered within two seconds in violation of 47 C.F.R. § 64.1200(a)(7).

      **1.**      **A Private Right of Action Exists Under 47 C.F.R. § 64.1200(a)(7).**

         **a.**      **The Regulations for 47 U.S.C. § 227(d) are found in 47 C.F.R. § 64.1200(b), not 47 C.F.R. § 64.1200(a).**

Both 6th Circuit case law and the regulatory history of the TCPA shows that 47 C.F.R. § 64.1200(a)(7) was *not* promulgated under 47 U.S.C. § 227(d) but was promulgated under both 47 U.S.C. §§ 227(b) and (c), each of which contain a private right of action.

Defendant opines, without any legal support, that 47 C.F.R. § 64.1200(a)(7) was promulgated under 47 U.S.C. § 227(d), however, this is incorrect. Not only does Defendant fail to cite to *any* case law that has held this – because there is none – but such a view goes against the TCPA regulatory history and Sixth Circuit precedence.[3]

In *Charvat v. NMP, LLC*, 656 F.3d 440, 443 (6th Cir. 2011), the Sixth Circuit addressed the issue of what regulations were proscribed under 47 U.S.C. § 227(d), which does not provide for a private right of action. While not directly addressing 47 C.F.R. § 64.1200(a)(7), the court made clear that the regulations related to 47 U.S.C. § 227(d) were contained in 47 C.F.R. § 64.1200(b).

"Subsection (d) of the TCPA contains '[t]echnical and procedural standards' for such automated telephone equipment and instructs the FCC to 'prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone' and to include certain listed minimum requirements. 47 U.S.C. § 227(d)(3); *see* 47 C.F.R. § 64.1200(b)." *Charvat v. NMP, LLC*, 656 F.3d 440, 443 (6th Cir. 2011) "Technical and procedural standards specific to automated calls are included in § 227(d) and accompanying

---

[3] The one case cited by Rocket dealt with 1200(a)(2) and (3), had no analysis, and cited to *Charvat* which does not support the holding. The other case simply held that there is no private right of action under 227(d) which does not define if 1200(a)(7) was promulgated under 227(d) and which the 6th circuit has held by implication it was not.

regulation **47 C.F.R. § 64.1200(b**), which do not provide a private right of action or a statutory-damages provision." *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011) (emphasis added). Thus, the Sixth Circuit has clearly held that the regulations related to 47 U.S.C. § 227(d) are in 47 C.F.R. § 64.1200(b).

The regulatory history of the TCPA also shows that the Technical and Procedural Standards of 47 U.S.C. § 227(d) are promulgated at 47 C.F.R. § 64.1200(b). Congress passed the TCPA on December 20, 1991. On April 17, 1992, the FCC released a notice of proposed rulemaking to implement the requirements of the TCPA. *In the Matter of the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 2736, 1992 WL 695438.

The 1992 order, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 1992 WL 690928 ("1992 Order") contained an entire section called "Technical and Procedural Standards" where the FCC discussed and implemented the requirements of 47 U.S.C. § 227(d). *1992 Order* at 8778, ¶ ¶ 52-54. In this section, the FCC states that the TCPA requires "all artificial or prerecorded telephone messages delivered by an autodialer state clearly the identity of the caller at the beginning of the message and the caller's telephone number or address during or after the message, § 227(d)(3)(A), and we adopt this requirement in our rules, 64.1200(d)." *Id*. at 8779 at ¶53. Then, eleven years later, in 2003, the FCC amended 47 C.F.R. § 64.1200 to include some additional provisions and in so doing moved the technical and procedural requirements at 47 C.F.R. § 64.1200(d) to 47 C.F.R. § 64.1200(b). *Compare* 47 U.S.C. § 227(d)(3) *with* 47 C.F.R. § 64.1200(d) (2002) *with* 47 C.F.R. § 64.1200(b) (2003) *with* 47 C.F.R. § 64.1200(b) (2022). Thus, the regulatory history of the TCPA shows the Technical and Procedural Standards of 47 U.S.C. § 227(d)(3) are found in 47 C.F.R. § 64.1200(b).

**b.    47 C.F.R. § 64.1200(a)(7) Protects the Same Interests as Those Found in 47 U.S.C. §§ 227(b) and 227(c) which Each Contain a Private Right of Action.**

47 U.S.C. §§ 227(b) and 227(c) are designed to protect consumers' right to privacy and to avoid the nuisance of unwanted calls. Receiving automated telemarketing calls, especially when you are on the Do Not Call Registry invades the recipient's privacy. The only thing worse is when you rush to answer those calls, and no one is there. The regulatory history of the TCPA shows that the FCC had, and invoked, its authority under both 47 U.S.C. §§ 227(b) and (c) to promulgate 47 C.F.R. § 64.1200(a)(7) to address these concerns.

When Congress passed the TCPA, it was concerned with two main categories of calls. The first category Congress was concerned about was automated calls which Congress regulated in subsection 227(b). The header for 227(b) is entitled, "Restrictions on use of automated telephone equipment." Under 227(b), Congress regulated the use of "automatic telephone dialing systems" and "prerecorded voices."

The second category Congress was concerned about was telephone solicitations which Congress regulated in subsection 227(c). The header for 227(c) is entitled, "Protection of subscriber privacy rights." Under 227(c), Congress sought to protect individuals from receiving sales calls which individuals did not want to receive.

Just as subsections 227(b) and 227(c) regulated different types of calls, each subsection independently required the FCC to prescribe regulations. Pursuant to 227(b)(2), the FCC "shall prescribe regulations to implement the requirements of this subsection." In other words, 227(b)(2) authorized the FCC to prescribe regulations respecting automated calls.

Pursuant to 227(c)(1), the FCC "shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Congress instructed the FCC to "compare and evaluate

13

alternative methods and procedures" to protect subscribers' privacy rights and to then implement

one or more approaches. *Id.* The options which Congress authorized included the use of a

National Do Not Call Registry, company-specific do-not-call lists, or "any other alternatives,

individually or in combination." See 227(c)(1)-(3). In other words, 227(c)(1)-(3) authorized the

FCC to prescribe regulations that protect subscribers from receiving calls they did not want to

receive or that invade their privacy.

In July 3, 2003, the FCC issued a major update to its regulations under the TCPA. *In Re*

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18

F.C.C.R. 14014, 2003 WL 21517853 ("2003 Order"). The introduction to the *2003 Order*

explained:

> In this Order, we revise the current TCPA rules and adopt new rules to provide
> consumers with **several options for avoiding unwanted telephone solicitations**.
> Specifically, we establish a national do-not-call registry. The national do-not-call registry
> will *supplement* the current company-specific do-not-call rules. To address the more
> prevalent use of predictive dialers, **we have determined that a telemarketer may
> abandon no more than three percent of calls answered by a person and must deliver
> a prerecorded identification message when abandoning a call.** We believe the rules
> the Commission adopts here strike an appropriate balance between **maximizing
> consumer privacy protections** and avoiding imposing undue burdens on telemarketers."

*2003 Order* (emphasis added) (cleaned up). These statements demonstrate that the privacy

interest in 227(b) and 227(c) were at issue.

Later in the *2003 Order*, the FCC noted "the majority of individual consumers contended

that the current company-specific approach was inadequate to prevent **unwanted telephone**

**solicitations. In the case of abandoned calls, there is no opportunity to make such a**

**request.**" *Id.* at 14066, ¶ 87 (emphasis added) (cleaned up). Consequently, the FCC said, "we

agree with those commenters. The widespread use of predictive dialers now **results in many**

**'dead air' or hang-up calls in which consumers do not even have the opportunity to make a**

**do-not-call request.**" *Id.* at 14067-68, ¶ 91 (emphasis added) (cleaned up). The FCC concluded its discussion by saying, "the measures adopted elsewhere in this order will enhance the effectiveness of the company-specific list. For example, restrictions on abandoned calls will reduce the number of 'dead air' calls." *Id.*

This clearly indicates that the FCC implemented the abandoned call regulations in 47 C.F.R. § 64.1200(a)(7) so consumers could exercise their rights under 227(c) to make a company-specific do-not-call requests. When a call is abandoned, consumers do not have the opportunity to make such a request.

The regulations under 47 C.F.R. § 64.1200(a)(7), however, do more than allow a consumer to make a do-not-call request. The abandoned call regulation is there to prevent the frustration that people have of answering the phone only to be met by silence. As the FCC explained,

> the record confirms that many consumers are angered by the 'dead air' they often face when answering the telephone. **Running to the telephone only to be met by silence can be frustrating and even frightening**, if the caller cannot be identified. To address the problem of 'dead air' produced by dialing technologies, the Commission has determined that a call will be considered abandoned if the telemarketer fails to connect the call to a sales representative within two (2) seconds of the person's completed greeting.

*Id.* at 14106, ¶ 153 (emphasis added). In other words, the abandoned call regulations protect consumers' privacy by preventing the annoying, frustrating, and sometimes frightening experience of answering calls in which nobody is there when you answer. The requirement that a consumer is transferred to a live sales rep within two seconds directly protects against these 'dead air' telephone solicitations. Pursuant to 227(c), the FCC has explicit authority to prescribe regulations to prevent these types of unwanted telephone solicitations.

While the foregoing clearly illustrates that the FCC invoked its authority and duty to protect consumers' privacy under 227(c) when prescribing 47 C.F.R. § 64.1200(a)(7), other

language in the *2003 Order* shows the FCC invoked its authority under 227(b) as well when prescribing § 64.1200(a)(7). In regard to prerecorded or automated calls covered under 227(b), the FCC stated:

> Opposition from industry to the two-second-transfer requirement appears to be based largely on its implications for use of Answering Machine Detection (AMD). … According to these commenters, 1-2 seconds is often insufficient for AMD to determine accurately if the call has reached an answering machine.  Other commenters explain that **AMD is used instead by telemarketers to transmit prerecorded messages** to answering machines; **in such circumstances, calls that reach live persons are disconnected.** Other industry members acknowledge that **AMD contributes significantly to the amount of "dead air" consumers experience**, and one large telemarketing firm maintains that AMD should be banned completely. The Commission believes that the record does not warrant a ban on the use of AMD. Instead, if the AMD technology is deployed in such a way that the delay in transfer time to a sales agent is limited to two seconds, then its continued use **should not adversely affect consumers' privacy interests**.

*Id*. at 14106-07, ¶ 154 (emphasis added) (cleaned up). As this discussion illustrates, automated calls using prerecorded messages can result in a response taking longer than two seconds after a recipient's completed greeting. Thus, the abandoned call violation can happen with any type of automated call – whether by a prerecorded message or artificial voice, etc. – which the FCC has authority to regulate under 227(b). For this reason, the FCC cautioned, "**prerecorded messages** sent by companies to customers with whom they have an established business relationship will *not be* considered 'abandoned' under the revised rules, if they are delivered within two (2) seconds of the person's completed greeting." *Id*. at 14109, ¶ 156 (emphasis added). Additionally, "**any messages** initiated with the called party's prior express consent and delivered within two (2) seconds of the called person's completed greeting are not 'abandoned' calls under the new rules." *Id.* However, this means that a telemarketer who places a prerecorded call that does not play within two seconds of the recipient's completed greeting is a violation of the abandoned call regulations, even if the telemarketer has consent to make the prerecorded call.

In conclusion, the FCC had authority under 227(b) and 227(c) to promulgate 47 C.F.R. § 64.1200(a)(7). The FCC had this authority under each subsection individually and under each subsection jointly.  The FCC invoked its authority under both subsections when promulgating the abandoned call regulations. Finally, just as 227(b) and 227(c) both regulate different types of calls, and just as both 227(b) and 227(c) authorize the FCC to prescribe regulations under each subsection, both 227(b) and 227(c) contain a private right of action that Michael is authorized to pursue. See 227(b)(3) and 227(c)(5).

### 2.  Plaintiff has Plead a Violation of 47 C.F.R. § 64.1200(a)(7).

The FCC was unambiguous in discussing the requirements of the abandoned call rule. The FCC stated,

> Under the new rules, telemarketers must ensure that any technology used to dial telephone numbers abandons no more than three (3) percent of calls answered by a person, measured over a 30-day period. **A call will be considered abandoned if it is not transferred to a live sales agent within two (2) seconds** of the recipient's completed greeting. **When a call is abandoned** within the three (3) percent maximum allowed, a telemarketer must deliver a prerecorded identification message containing only the telemarketer's name, telephone number, and notification that the call is for "telemarketing purposes.

*2003 Order* at 14014, ¶ 150 (emphasis added). This clearly indicates there are two general requirements and duties that telemarketers have when making telemarketing calls. First, they cannot abandon more than 3% of the calls. Second, for any calls that are not answered within two seconds of the recipient's completed greeting, a prerecorded identification and opt-out message must play. Failure to comply with either requirement is an independent violation of 47 C.F.R. § 64.1200(a)(7).

Despite Rocket's false statement otherwise, Plaintiff has plead that some of his calls were not answered within two seconds and that no opt-out message played, and thus abandoned

pursuant to the regulation. (Complaint, ¶ 26.) Thus, Plaintiff has a private right of action and has adequately plead his claims under 47 C.F.R. § 64.1200(a)(7).

## IV.   CONCLUSIONS

Plaintiff has adequately plead all of his claims, and the Motion to Dismiss should be denied.

Dated: November 11, 2022

Respectfully submitted,

/s/ *Amy L. Bennecoff Ginsburg*
Amy L. Bennecoff Ginsburg
LawHQ, P.C.
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
amy.ginsburg@lawhq.com

18