UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DAHDAH,                                       Case No. 22-11863

    Plaintiff,                                               F. Kay Behm
v.                                                                     United States District Judge

ROCKET MORTGAGE, LLC,

    Defendant.
_____/

**ORDER GRANTING MOTION TO DISMISS THE COMPLAINT (ECF No. 12) and DENYING MOTION TO COMPEL ARBITRATON AS MOOT (ECF No. 11)**

**I.     PROCEDURAL HISTORY**

Plaintiff, Michael Dahdah, filed this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, against Rocket Mortgage, LLC ("Rocket") on August 11, 2022.  (ECF No. 1).  Rocket filed a motion to compel arbitration and a separate motion to dismiss based on Rule 12(b)(6), which is fully briefed.  (ECF No. 11, 12, 15, 16, 17, 18).  The court held a hearing via video teleconference on May 31, 2023.

For the reasons set forth below, the court **GRANTS** the motion to dismiss the complaint and **DENIES** the motion to compel arbitration as moot.

1

## II. THE COMPLAINT

Dahdah is the residential subscriber of the cell phone number 310-951-0114 and has been for many years. Dahdah uses this number for personal use and does not use it in any business. (ECF No. 1, ¶ 20). Dahdah registered his number on the National Do-Not-Call Registry (DNCR) in 2017. *Id*. at ¶ 21. Rocket made at least eight calls to Dahdah's cell phone between June 27, 2022 and June 30, 2022. *Id*. at ¶ 22. Some of the calls happened around 5:00am, waking up Dahdah. *Id*. at ¶ 23. Dahdah is not now, and never has been, a customer of Rocket. *Id*. at ¶ 24. Rocket made the calls for the purpose of selling mortgage products and services. *Id*. at ¶ 25. When Dahdah answered the calls, no one responded for more than two seconds, and no message played. Sometimes nobody was on the other end of the call. *Id*. at ¶ 26. Dahdah told Rocket to stop calling him multiple times, yet he continued to receive calls. *Id*. at ¶ 27. Dahdah is the sole user of his phone number and has never authorized anyone else to use his number. *Id*. at ¶ 30. Dahdah never provided his phone number to Rocket and never agreed to Rocket contacting him in any way. *Id.* at ¶ 31.

Dahdah asserts four claims under the TCPA. In Count I, Dahdah asserts that Rocket made telemarketing calls to him while he was on the DNCR. Residential telephone subscribers who do not want to receive telephone solicitations may

place their phone number on the DNCR.  47 C.F.R. § 64.1200(c).  The TCPA proscribes callers from making "any telephone solicitation to... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry."  47 C.F.R. § 64.1200(c)(2).  The Complaint alleges that Rocket made at least two calls that were trying to sell him mortgage products and were made while his number was registered on the DNCR.

In Count II, Dahdah asserts that Rocket failed to honor direct do-not-call requests.  The FCC issued regulations prohibiting persons or entities from initiating any call for telemarketing purposes to a residential telephone subscriber unless the person or entity has instituted certain listed procedures for maintaining a do-not-call list.  *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44 (6th Cir. 2011); 47 C.F.R. § 64.1200(d).  "[T]he regulations require the telemarketer to …; (3) honor a person's request not to be called, § 64.1200(d)(3)."  *Id*.  If a person makes a do-not-call request, the business must honor that request within a reasonable time from the date such request is made.  *Id*.  In the Complaint, Dahdah alleges that that he requested the calls made to him that were trying to sell him mortgage products stop, but they continued, and he received more than two calls thereafter.

3

In Count III, Dahdah alleges that Rocket violated 47 C.F.R. § 64.1200(a)(7) by not having an opt-out mechanism for answered calls trying to sell mortgage products where an agent of Rocket failed to respond to an answered call within two seconds. "A call is 'abandoned' if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting." 47 C.F.R. § 64.1200(a)(7). Whenever a call is abandoned, "the telemarketer or the seller must provide a prerecorded identification and opt-out message." *Id*. at § 64.1200(a)(7)(i). Dahdah alleges that some of the calls to him, trying to sell mortgage products, were not answered and there was no opt-out mechanism.

Finally, in Count IV, Dahdah asserts that he was called at times proscribed by the TCPA. Title 47 C.F.R. § 64.1200(c)(1) provides that: "No person or entity shall initiate any telephone solicitation to: (1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)." The Complaint alleges that Dahdah received calls trying to sell mortgage products at 5:00 a.m.

## III.   ANALYSIS

### A.   Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] ...

4

[and] accept all well-pled factual allegations as true*." League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted). A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. The factual allegations "must do more than create speculation or

5

suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

In evaluating the allegations in the Complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *id*. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"). Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *See*

6

*United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

    B.    <u>The Complaint Fails to Sufficiently Plead Threshold Elements for Counts I, II, and IV.</u>

Rocket argues that the alleged regulatory violations set forth in Counts I, II, and IV fail to state a claim because such claims require Dahdah to plead and prove that he "received more than one" telephone solicitation call (§ 64.1200(c)) or telemarketing call (§ 64.1200(d)) "within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The regulations define "telephone solicitation" and "telemarketing" calls as "a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §§ 64.1200(f)(13) and (15). According to Rocket, Dahdah fails to plead that he received these types of calls from Rocket. Rocket maintains that the lack of factual allegations about the content or details of any one of the eight challenged calls (e.g., date and time, participants, content or subject matter, etc.) is fatal to Dahdah's claims in Counts I, II, and IV. In response, Dahdah argues that the complaint adequately pleaded the calls as telemarketing calls because the calls made by Rocket offering to sell mortgage products are plainly telephone solicitations and marketing calls. Dahdah maintains that his allegation that

Rocket made the calls for the purpose of selling mortgage products and services is not conclusory.

The court finds it difficult to draw the inference that the calls, as described in the Complaint, constitute calls made for a solicitation or marketing purpose. While Dahdah's argument that there is no other reason for Rocket to have made the calls has some appeal, it is not sufficient to state a claim under the TCPA. The TCPA prohibits any person or entity from initiating any "telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government …". 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(1). The TCPA defines "telephone solicitations" as "the initiation of a telephone call or message for the purpose of *encouraging the purchase or rental of, or investment in, property, goods, or services*, which is transmitted to any person …". 47 U.S.C. § 227(a)(4) (emphasis added). Here, the Complaint suggests that the calls identified therein involved no actual communications from Rocket or that Rocket was looking to speak with someone other than Dahdah. It is not reasonable to draw an inference from these calls that they were made for a marketing or solicitation purpose. And to the extent the Complaint suggests that Dahdah received some calls where he

spoke with Rocket representatives, nothing in the Complaint describes the content of such calls and thus, the court cannot reasonably infer that Rocket made the calls for the purpose of encouraging the purchase of its services. Accordingly, the threshold of plausibility has not been crossed. *See e.g.*, *Katz v. CrossCountry Mortg., LLC*, 2022 WL 16950481, at *6 (N.D. Ohio Nov. 15, 2022) ("Without factual allegations as to the content of these calls, Plaintiff's FAC fails to properly allege that such calls were solicitations under the TCPA."). Dahdah's theory that there could be no other purpose for the calls is not sufficient to state a claim.

    Dahdah's reliance on *Gulden v. Quicken Loans, Inc.*, 2016 WL 9525223 (D. Ariz. May 31, 2016) in support of his argument that his Complaint sufficiently states claims under the TCPA is unavailing. There, the court, in evaluating a *pro se* complaint, rejected the defendant's claims that the complaint did not include factual allegations regarding the content and purpose of the phone calls at issue. *Id*. at *2. The court did so because the defendant failed to elaborate on why the details of the alleged solicitations were helpful or necessary. *Id*. In contrast, Rocket provides reasons why the failure to include the content of the calls at issue is problematic. For example, Dahdah alleges that no one was on the other end of the call and Rocket points out that if no one was on other end, no inference can

be drawn that the calls were made for a solicitation or marketing purpose. Additionally, the Complaint alleges that Rocket indicated it was trying to reach someone else, which suggests that the calls had nothing to do with encouraging Dahdah to purchase services from Rocket. Thus, *Gulden* is not persuasive here. Accordingly, Counts I, II and IV fail to state a claim and must be dismissed.

    C.    <u>The Complaint Fails to Plausibly Allege That Rocket Mortgage Failed to Honor His Opt-Out Request and Thus Fails to State a Claim Under 47 C.F.R. § 64.1200(d).</u>

Rocket also argues that Count II fails for the additional reason that the Complaint fails to plausibly allege that Rocket did not timely honor his opt-out request. First Rocket says that the Complaint contains no factual allegations about how, to whom, or when Dahdah made his request to Rocket to stop calling him. Rocket cites *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) for the proposition that revocation of consent must be clearly made. While true, *Van Patten* concluded that there was no evidence of revocation in the record in the context of summary judgment, not whether a pleading sufficiently alleged revocation of consent. *Id*.

Dahdah cites *Gold v. Ocwen Loan Servicing, LLC*, 2017 WL 6342575, at *2 (E.D. Mich. Dec. 12, 2017) for the proposition that a plaintiff need not allege specific dates and time of when he orally revoked consent. However, in *Gold*, the

10

plaintiff specifically alleged that he told the defendant's agents repeatedly on the phone to stop calling him. *Id*. Here, in contrast, Dahdah has not revealed the method of making his do-not-call request, whether oral or written, whether via telephone, text, email, or letter. Further, in *Jones v. DASCO-Norton Home Med. Equip., LLC*, Case No. 3:18-cv-93, 2018 WL 2225260, at *2 (W.D. Ky. May 15, 2018), the court held that the plaintiff, by claiming that he revoked his prior consent, and by providing a specific instance of alleged revocation, had stated a plausible claim for relief under the TCPA.[1] Here, Dahdah's allegations in the Complaint regarding his do-not-call request fall short of the revocation requests found plausible in *Gold* and *Jones*. Accordingly, the court finds that Count II fails to state a claim for this reason as well.

    D.    <u>Count II Fails to State a Claim Regarding the Requisite Internal Do-Not-Call List Procedure</u>

---

[1] The complaint in *Jones* alleged as follows:

16.    On several occasions since the inception of the account, Plaintiff instructed Defendant's agent(s) to stop calling his cellular telephone.

17.    In or about August of 2017, Plaintiff received a call from Defendant, was met with an automated message informing him the call was from Dasco, held the line to be connected to an agent/representative of Defendant, explained to the agent/representative of Defendant that they were calling him every day, it was disruptive and harassing, and instructed Defendant's agent to take him off their call list and stop calling his cellular telephone.

See *Jones v. DASCO-Norton*, Case No. 3:18-cv-93 (W.D. Ky.), ECF No. 1, PageID.4.

Finally, Rocket argues that Dahdah fails to state a claim in Count II regarding Rocket's procedure for maintaining an internal do-not-call list. This provision provides that "persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R. § 64.1200(d). Rocket argues that Dahdah must have, but failed, to plead that he requested this policy or that Rocket Mortgage failed to provide it. And, in the absence of plausible factual allegations that Rocket lacked this procedure, this claim should be dismissed. Further, Rocket points out that in 2018, the Southern District of Florida concluded in *Nece v. Quicken Loans, Inc. (n/k/a/ Rocket Mortgage)* that Rocket has had the requisite internal do-not-call list procedure in place since as early as 2012—ten years before the 2022 calls alleged here. 2018 WL 1326885, at *7-8.

Dahdah contends that allegations of the receipt of calls after a do-not-call request is made plausibly state a claim that the necessary policies are not in place. Dahdah further argues that not only must Rocket have a policy, but it must implement that policy. This is true, but, in the court's review, the Complaint still does not cross the threshold of plausibility. "Per the regulations, these internal do-not-call procedures must meet certain minimum standards, including maintaining a written policy for keeping an internal do-not-call list, training

12

personnel engaged in telemarketing, and recording when an individual requests to be put on an entity's do-not-call list." *Adam v. CHW Grp., Inc.*, No. 21-CV-19-LRR, 2021 WL 7285905, at *7 (N.D. Iowa Sept. 9, 2021) (quoting *Hand v. Beach Entertainment KC, LLC*, 456 F.Supp.3d 1099, 1124 (W.D. Mo. 2020) (citing 47 C.F.R. § 64.1200(d)(1)-(6)). In *Adam*, the plaintiff alleged that (1) he asked the defendant to remove him from the call list and to stop contacting him; (2) the defendant failed to honor that request; (3) the failure to honor the opt-out request was indicative of (a) a lack of a written policy for maintaining internal do-not-call procedures, (b) the defendant's failure to maintain a do-not-call list, (c) the defendant's failure to inform and train its employees about the existence and use of the do-not-call list, and (d) demonstrated that the defendant did not record opt-out requests or place subscriber's name and telephone numbers on the do-not-call list when the requests are made. *Id*. at *9. Similarly, in *Buja v. Novation Cap., LLC*, No. 15-81002-CIV, 2017 WL 10398957, at *5 (S.D. Fla. Mar. 31, 2017), the plaintiff alleged that "Defendants did not have reasonable practices and procedures in place to effectively prevent telephone solicitations ... as evidenced by its calls to Plaintiff who repeatedly requested Defendants stop calling." The court held that these factual allegations were sufficient to raise a right to relief above the speculative level and state a plausible claim. *Id.* Dahdah's Complaint,

13

however, does not contain allegations similar to those in *Adam* and *Buja*. Instead, Dahdah asks the court to draw a number of inferences regarding the lack of a policy or the failure to implement a policy based solely on the allegation that calls were made after Dahdah made the do-not-call request. In light of *Adam* and *Buja*, the court finds that allegation insufficient. Thus, the claim for an alleged failure to maintain an internal do-not-call policy/list fails to state a plausible claim for relief.

    E.    <u>Plaintiff Fails to State a Claim Under 47 C.F.R. § 64.1200(a)(7) in Count III.</u>

The parties disagree on whether Dahdah may assert a private right of action for an alleged violation of § 64.1200(a)(7) as set forth in Count III. The court finds it unnecessary to address this issue because Dahdah has, in any event, failed to state a claim under this provision. The regulation at issue provides that:

> (a) No person or entity may:
> \* \* \*
> (7) Abandon more than three percent of all telemarketing calls that are answered live by a person, as measured over a 30–day period for a single calling campaign. If a single calling campaign exceeds a 30–day period, the abandonment rate shall be calculated separately for each successive 30–day period or portion thereof that such calling campaign continues. A call is "abandoned" if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting.

47 C.F.R. § 64.1200(a)(7). Dahdah's complaint describes the violation of this regulation as Rocket's "failure to provide a precorded (sic) identification and opt-out message, as well as an automated, interactive voice- and/or key press-activated mechanism, whenever a live sales representative was not available to speak within two seconds of the called person's completed greeting." (ECF No. 1, ¶ 57). To state a violation of this provision, Dahdah must plausibly allege that no more than three percent of live telemarketing calls were "abandoned," which means that the call was not connected to a live sales representative within two seconds of the called person's greeting. This provision requires information about the abandonment rate, which Dahdah's complaint fails to mention. Accordingly, Count III of the Complaint fails to state a claim for a violation of § 64.1200(a)(7) and must be dismissed.

### IV.   CONCLUSION

For the reasons set forth above the court **GRANTS** the motion to dismiss, **DISMISSES** the Complaint in its entirety, and **DENIES** the motion to compel arbitration as moot.

**SO ORDERED**.

Date: September 12, 2023                     s/F. Kay Behm
                                             F. Kay Behm
                                             United States District Judge