UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Michael Dahdah, | Case No. 22-11863 |
| Plaintiff, | Hon. F. Kay Behm<br>United States District Judge |
| v. | |
| Rocket Mortgage, LLC, | |
| Defendant. | |

# **FIRST AMENDED COMPLAINT AND JURY DEMAND**

## INTRODUCTION

1. Defendant Rocket Mortgage, LLC ("Rocket") engages in aggressive telemarketing of mortgage products that violates the Telephone Consumer Protection Act ("TCPA").

2. Sometimes when people answer the calls from Rocket, there is silence and no one is on the line. And then the call disconnects and there is no mechanism to opt out of future calls.

3. Other times when people answer the calls from Rocket, a representative does come on the line to try to sell Rocket's mortgage products. When people ask Rocket to stop calling, Rocket ignores the opt-out requests and these people get more calls after their request to be left alone.

4. Rocket makes these calls even though many of these people are on the Do Not Call Registry.

5. Rocket wakes people up at 5 a.m. with its telephone calls.

6. Like most Americans, Plaintiff Michael Dahdah ("Michael") has a mobile cellular telephone.

7. He uses his phone to receive and make important calls, to get emergency information and to receive and send messages to family members and friends. He uses his phone for his personal enjoyment.

8. Rocket is a company that markets mortgage products through unwanted telemarketing calls.

9. Rocket has initiated telemarketing calls to Michael and members of the classes.

10. Michael and class members have tried to stop these calls.

11. First, they registered their numbers on the national Do Not Call Registry ("DNCR"), but Rocket called anyway.

12. Second, Michael, and some Class members, have tried to eliminate the harassment, invasion of their privacy and other damage from the unauthorized calls by directly requesting that Rocket stop calling them, but even that has not worked.

13. Rocket does not honor those do not call requests.

14. Adding to Michael's and the classes' frustration, Rocket abandons calls by failing to connect to a live sales representative within two (2) seconds of the called person's completed greeting and then not playing a prerecorded or automated message that allows them to opt out.

15. Rocket knows that making telemarketing calls to people on the DNCR, failing to honor opt-outs, and abandoning calls is an invasion of people's privacy and violates the Telephone Consumer Protection Act ("TCPA").

16. These calls have caused Michael and the Class members frustration, stress, and anxiety. Rocket's practices prohibit them from enforcing their rights to make a do-not-call request. The calls cause them to avoid looking at their phones or answering calls when it may have been important. The calls reduce their phones' storage and battery life. Opt-out requests are ignored causing extra frustration. Personal time is lost. In short, the calls invade their privacy, diminish the value of their phones and their enjoyment of life, and cause a nuisance, annoyance, and an intrusion into their seclusion.

17. "In enacting the TCPA, Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.' … In plain English, the TCPA prohibited almost all robocalls to cell phones." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344, 207 L. Ed. 2d 784 (2020).

18. Because of Defendant's continuing violations of the law, Michael brings this action for himself and for other similarly situated people in the United States to enjoin these abusive practices, and for damages.

## JURISDICTION AND VENUE

19. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C § 227.

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is located within this district, and a significant portion of the facts giving rise to this lawsuit occurred in this District.

## PARTIES

21. Plaintiff Michael Dahdah is a resident of Los Angeles County, California.

22. Defendant Rocket Mortgage, LLC is part of Rocket Companies, Inc and is a Delaware Corporation with its principal place of business in Wayne County, Michigan.

## FACTUAL ALLEGATIONS

23. Michael, and Class members, have residential cellular telephones and have had their privacy and the use of their phones invaded by the telemarketing calls from Rocket.

24. Michael is the residential subscriber of the cell phone number 310-951-0114 and has been for many years. Michael uses this number for personal use and does not use it in any business.

25. Michael registered his number on the National Do Not Call Registry in 2017.

26. On or around June 20, 2022, Rocket began making calls to Michael.

27. Michael recalls that he answered at least one of the calls on or around June 20, 2022, and spoke with someone who said they were with Rocket and offering mortgage products.

28. On that call he told them to stop calling.

29. Even though Michael told Rocket to stop calling, Rocket continued to call.

30. On or around June 20, 2022, Michael answered another call from Rocket, but there was silence. After waiting for some time, the call was disconnected without the call being connected to anyone. Rocket simply let the call disconnect.

31. In addition to the calls on or around June 20, 2022, there were additional calls during the week of June 27, 2022, after he had already told Rocket at least once to stop calling.

32. Rocket made at least eight calls to Michael's cell phone during the week of June 27, 2022 from the phone number 800-868-5177. Those calls are as follows (all times in Pacific time zone):

   i. June 27, 2022 at 5:12 am
   ii. June 27, 2022 at 7:45 am
   iii. June 27, 2022 at 9:53 am
   iv. June 27, 2022 at 12:06 pm
   v. June 29, 2022 at 6:26 am
   vi. June 29, 2022 at 11:21 am
   vii. June 29, 2022 at 2:21 pm
   viii. June 30, 2022 at 6:56 am

33. The first call at 5:12 am on June 27, 2022 woke Michael up. Michael did not answer the call.

34. Michael answered the next call two and a half hours later at 7:45 am. There was a long delay— of more than two seconds—before anyone responded. When someone finally connected on the other end of the line, they said they were with Rocket and offering mortgage products. On this call, Michael indicated he was not interested and again told them to stop calling.

35. On each call that he answered, Rocket indicated that it was calling to try to sell him mortgage refinancing. Michael was not looking to refinance at that time.

36. Additionally, Rocket submitted evidence previously in this matter that its calls to Michael's number were to sell mortgage products. Rocket stated: "…, Rocket Mortgage contacts individuals who have expressed an interest in learning more about its mortgage products…" (ECF 11, pg.2). Rocket further states that it contacts people about "mortgage and financial services products." (ECF 11, pg 5). Most directly Rocket states: "… Rocket Mortgage contacted Plaintiff by telephone to respond to his request for mortgage refinance information." (ECF 11, pg. 12).

37. Even though Michael had told Rocket multiple times to stop calling, Rocket insisted on continuing to call to try to sell its mortgage services up through at least June 30th.

38. Rocket proceeded to call Michael two more times on June 27, three more times on June 29, and another time on June 30.

39. Rocket is an extremely sophisticated and technologically advanced company. With this degree of sophistication, size, and automation, Rocket is undoubtedly capable of honoring a consumers' stop request immediately.

40. However, Rocket purposefully ignores consumers' stop requests in an effort to try to get one, two, or even twenty or more bites at the proverbial apple, in an effort to shove its mortgage services in front of consumers who have asked to be left alone.

41. Michael is not the only consumer exasperated and frustrated by Rocket's knowing and willful refusal to honor consumers' stop request. Here is just a sampling of complaints in which Rocket has refused to honor stop requests:

  i. In *Deits v. Rocket Mortgage LLC*, No. 2:23-cv-02385-GMS (D.Ariz.) Dkt #1 ¶¶ 20-25, the Plaintiff complained that after asking Rocket to stop calling, Rocket called at least 27 times over 10 days trying to sell its mortgage services.

  ii. In *Ksaizkiewicz v. Rocket Mortgage*, LLC, No. 1:22-cv-04884 (N.D.Ill.) Dkt #1 ¶¶ 19-24, the Plaintiff complained that after asking Rocket multiple times to stop calling, Rocket continued to make more than 20 calls and to send 4-5 text messages over a six-month period trying to sell its mortgage services.

    iii. In *Shirley v. Rocket Mortgage*, LLC, No. 2:21-cv-13007-SFC-KGA (E.D.Mich.) Dkt #1 ¶¶ 17-20, the Plaintiff complained that after asking Rocket to stop calling, Rocket continued to send text messages over a year later. And after responding "Stop" to the text messages, Rocket continued to send more text messages trying to sell its mortgage services. Id.

    iv. In *Laccinole v. Rocket Mortgage*, LLC, No. 1:21-cv-00478-JJM-LDA (D.R.I.) Dkt #1-1 ¶¶ 34, 38, 49-54, the Plaintiff complained that after asking Rocket to stop calling, Rocket continued to call, sometimes four times per day, trying to sell Rocket's financial services.

    v. On May 22, 2023, a user on Reddit complained:

> Rocket mortgage harassed me for months…. I blocked their number in July because they would call me every single morning at 6 am. I asked them several times to **please stop contacting me**. The entire month of June and July was a daily call and **daily request to not be contacted**... **I wanted to be left alone**. Then they started the daily calls and sales pitches. It looks like thankfully they stopped but I wish there was a way to report them for this kind of harassment!

> https://www.reddit.com/r/mildlyinfuriating/comments/13ot77o/rocket_mortgage_harassed_me_for_months/ (emphasis added) (last accessed November 28, 2023).

42. This is just a small sample. There are many other complaints, both online and in the courts, about Rocket ignoring consumers' stop requests.

43. Rocket does not have reasonable practices and procedures in place to effectively prevent telephone solicitations as evidenced by Rocket's calls to Michael and many others who repeatedly requested Rocket stop calling but Rocket continued to call.

44. These calls have caused Michael and the Class members frustration, stress, and anxiety. The calls were abandoned, adding to the frustration of answering an unwanted call only to hear silence. The calls caused them to avoid looking at their phones and answering calls when it may have been important. The calls reduce their phones' storage and battery life. In short, the

calls invade their privacy, diminish the value of their phones and their enjoyment of life, and cause a nuisance, annoyance, and an intrusion into their seclusion.

## LEGAL STANDARD

45. **Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the DNCR. 47 C.F.R. § 64.1200(c). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

46. **Honoring Do Not Call Requests.** Telemarketers must "honor a person's request not to be called, § 64.1200(d)(3)." *Charvat v. NMP, LLC*, 656 F.3d 440, 443–44 (6th Cir. 2011). Telemarketers must honor the request "within a reasonable time from the date such request is made. This period may not exceed 30 days." 47 C.F.R. § 64.1200(d)(3). "Telemarketers with the **capability to honor** such company-specific do-not-call requests in **less than thirty days <u>must do so</u>**." *Rules and Regulations Implementing the TCPA*, 68 Fed. Reg. 44144, 14069, ¶ 94 (emphasis added). "This process [to honor do-not-call requests] is now largely automated." *Id.* Whether a business honors a plaintiff's do-not-call request in a reasonable amount of time is a question of fact for the jury to decide. *Nece v. Quicken Loans, Inc.*, No. 8:16-cv-2605-T-23CPT, 2018 WL 1326885, at *7 (M.D. Fla. Mar. 15, 2018).

47. **Calls before 8 a.m**. 47 U.S.C. §1200(c)(1) provides that: No person or entity shall initiate any telephone solicitation to: (1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location).

## CLASS ACTION ALLEGATIONS

48. Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself, and two Classes of persons similarly situated in order to remedy the ongoing unlawful business practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

49.     **Class Definitions.** Plaintiff proposes the following two Classes:

> **The Do Not Call Class.** All persons throughout the United States (1) to whom Rocket placed, or caused to be placed, at least two calls within a 12-month period (2) initiated to a number on the Do Not Call Registry, but not assigned to an account holder of Rocket (3) who had previously asked for the calls to stop, (4) in the four years before the filing of this action through the date of class certification.

> **The Internal DNC Class.** All persons throughout the United States (1) to whom Rocket placed, or caused to be placed, at least two calls within a 12-month period (2) initiated to a number not assigned to an account holder of Rocket (3) who had previously asked for the calls to stop (4) in the four years before the filing of this action through the date of class certification.

50.     A prospective class must meet a total of seven independent requirements. An identifiable class must exist, the definition of the class must be unambiguous, and the named representative must be a member of the class. The remaining five requirements originate in Rule 23(a) and (b): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Finally, in addition to the prerequisites of Rule 23(a), a party seeking class certification must show that the class action is maintainable under Rule 23(b).

51.     **Numerosity.** Proposed classes with hundreds of members are routinely held to satisfy the numerosity requirement. In determining whether to certify a class, it is not necessary for a court to know the precise number of class members. Rather, the court may rely upon reasonable inferences drawn from the known facts.  Here, the Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from Defendant's business records and likely number in at least the tens of thousands. Upon information and belief, Defendant makes millions of telemarketing calls a year.

52. **There are questions of law or fact common to the class.** There are questions of law and fact common to the proposed Classes. Traditionally, it has been the rule that to satisfy the commonality requirement, only one single issue that is common to all members of the class is required, not multiple issues. The common questions herein include, *inter alia*:

   i. Did Plaintiff receive a call from Rocket?
   ii. Does Rocket honor do not call requests within a reasonable time?
   iii. Were the calls telemarketing calls?
   iv. Were Rocket's actions willful or knowing?
   v. Are class members entitled to the statutorily mandated relief?

Common answers to these questions will drive the resolution of the litigation.

53. **Typicality**. Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. This requirement seeks to ensure that the interests of the named representatives align with the interests of the members of the proposed class. A named plaintiff's claim is typical if the claim arises from the same practice, event or course of conduct giving rise to the other class members' claims and claims are based on the same legal theory. Plaintiff's claims herein are typical of those of the Classes he seeks to represent. Plaintiff's and the Class members claims arise from the same conduct of Defendant: improper calls while on the Do Not Call Registry, and failure to timely honor do not call requests. There are no unique issues or defenses to Plaintiff's claims. Plaintiff's interests align with members of the Class.

54. **Adequacy.** The named representatives must have common interests with the unnamed members of the class, and it must be apparent that the named representatives will vigorously prosecute the interests of the class through qualified counsel.  Plaintiff is an adequate representative of the Classes because his interests are common with the interests of the Classes, and he will fairly and adequately protect the interests of the Classes by pursuing this matter. Plaintiff is represented by counsel competent experienced in TCPA and class action litigation.

55. **Rule 23(b)(3) issues**. The questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication and deters illegal activities. The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Managing this case as a class action should have no significant difficulties. It will prevent inconsistent results.

56. A class is sufficiently ascertainable when class members can be identified based on objective criteria. *See, Rikos v. P&G*, 799 F.3d 497, 526 (6th Cir. 2015). The Classes are ascertainable using objective criteria from Defendant's own records and the national Do Not Call Registry.

57. The law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all Class members. Precedent demonstrates these questions can be litigated as a class.

## FIRST CAUSE OF ACTION

**Violations of 47 U.S.C. § 227(c) & 47 C.F.R. 64.1200(c)**

**(On Behalf of Plaintiff and the Do Not Call Class)**

58. Defendant's initiating two telemarketing calls within 12 months to people on the Do Not Call Registry after they asked for the calls to stop violated 47 U.S.C. § 227(c) and 47 C.F.R. 64.1200(c).

59. As a result of Defendant's violations of 47 U.S.C. § 227(c) and 47 C.F.R. 64.1200(c), Plaintiff and members of the Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

60. Because Defendant knowingly and willfully violated 47 C.F.R. 64.1200(c), the Court should treble the $500.00 per-call award to $1,500.00 in statutory damages for each violation.

61.     Plaintiff and members of the Do Not Call Class are also entitled to injunctive relief prohibiting Defendant from making calls to people on the Do Not Call Registry.

## SECOND CAUSE OF ACTION

### Violations of 47 C.F.R. § 64.1200(d)

### (On Behalf of Plaintiff and the Internal Do Not Call Class)

62.     Defendant's failure to honor the opt-out requests of Plaintiff and members of the Class constitutes a violation of 47 C.F.R. § 64.1200(d).

63.     That failure demonstrates a lack of a proper written policy for maintaining internal do not call procedures and to honor do not call requests within a reasonable time.

64.     As a result of Defendant's violation of 47 C.F.R. § 64.1200(d), Plaintiff and members of the Internal Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation.

65.     Because Defendant knowingly and willfully violated 47 C.F.R. § 64.1200(d), the Court should treble the $500.00 per-call award to $1,500.00 in statutory damages for each violation.

66.     Plaintiff and members of the Internal Do Not Call Class are also entitled to and seek injunctive relief prohibiting Defendant from timely honoring do not call requests.

## THIRD CAUSE OF ACTION

### Violations of 47 C.F.R. § 64.1200(c)(1)

### (On Behalf of Plaintiff)

67.     Defendant's calls before 8 a.m. constitutes a violation of 47 C.F.R. § 64.1200(c)(1).

68.     As a result of Defendant's violation of 47 C.F.R. § 64.1200(c)(1), Plaintiff has been damaged and is entitled to an award of $500.00 in statutory damages for each violation.

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

      A.      Certification of the proposed Classes.

      B.      Appointment of Plaintiff as class representatives.

      C.      Appointment of the undersigned as counsel for the Classes.

      D.      An order enjoining Defendant as set forth above.

      E.      An award of damages to Plaintiff and the Classes as allowed by law; and

      F.      Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the Complaint so triable.

Dated: October 4, 2024

Respectfully Submitted,

*/s/ James Wertheim*
James Wertheim
LawHQ, P.C.
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
jim@lawhq.com